David H. Bundy (AK Bar 7210043)
DAVID H. BUNDY, P.C.
310 K Street, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 248-8431
Facsimile: (907) 248-8434

Timothy A. ("Tad") Davidson II *(admitted pro hac vice)*
David A. Zdunkewicz *(admitted pro hac vice)*
Joseph P. Rovira *(admitted pro hac vice)*
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285

Proposed Attorneys for the Debtors

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Cook Inlet Energy, LLC; | § | Case No. 15-00236 |
| Miller Energy Resources, Inc.; | § | Case No. 15-00313 |
| Miller Drilling, TN LLC; | § | Case No. 15-00314 |
| Miller Energy Services, LLC; | § | Case No. 15-00315 |
| Miller Energy GP, LLC; | § | Case No. 15-00316 |
| Miller Rig & Equipment, LLC; | § | Case No. 15-00318 |
| East Tennessee Consultants, Inc.; | § | Case No. 15-00319 |
| East Tennessee Consultants II, L.L.C.; | § | Case No. 15-00320 |
| Anchor Point Energy, LLC; | § | Case No. 15-00321 |
| Savant Alaska, LLC; and | § | Case No. 15-00322 |
| Nutaaq Operating LLC.[1] | § | Case No. 15-00323 |
| | § | |
| Debtors. | § | Joint Administration Requested |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Cook Inlet Energy, LLC, an Alaska limited liability company (6643); Miller Energy Resources, Inc., a Tennessee corporation (8629); Miller Drilling, TN LLC, a Tennessee limited liability company (8891); Miller Energy Services, LLC, a Delaware limited liability company (8670); Miller Energy GP, LLC, a Delaware limited liability company (0999); Miller Rig & Equipment, LLC, a Delaware limited liability company (8727); East Tennessee Consultants, Inc., a Tennessee corporation (3108); East Tennessee Consultants II, L.L.C., a Tennessee limited liability company (0107); Anchor Point Energy, LLC, an Alaskan limited liability company (7946); Savant Alaska, LLC, a Colorado limited liability company (0579); and Nutaaq Operating LLC, an Alaska limited liability company (2908).

**DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS AND RELATED AMOUNTS, (II) CONFIRMING RIGHT OF DEBTORS TO CONTINUE EMPLOYEE PROGRAMS ON POSTPETITION BASIS, (III) CONFIRMING RIGHT OF DEBTORS TO PAY WITHHOLDING AND PAYROLL-RELATED TAXES AND (IV) DIRECTING BANKS TO HONOR PREPETITION CHECKS FOR EMPLOYEE OBLIGATIONS**

**A HEARING WILL BE CONDUCTED ON THIS MATTER AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA, 605 W. 4th AVENUE, SUITE 138, ANCHORAGE, ALASKA 99501. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT. IN ADDITION TO FILING YOUR RESPONSE WITH THE CLERK, YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE AND TO ANY OTHER PARTY SPECIFIED IN THE NOTICE. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED WITHOUT A HEARING.**

**EMERGENCY RELIEF AND AN EXPEDITED HEARING HAVE BEEN REQUESTED. IF THIS COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS TIME TO RESPOND. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT AND IMMEDIATELY SERVE A COPY OF YOUR RESPONSE ON COUNSEL FOR THE DEBTORS AND ON ANY OTHER PARTY SPECIFIED IN THE NOTICE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

Miller Energy Resources, Inc., *et al* debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors" or "Miller"), hereby file this emergency motion (the "Motion") for entry of an order under 11 U.S.C. §§ 105, 363 and 507 authorizing the Debtors to (i) pay prepetition employee obligations and related amounts, (ii) confirming the Debtors' right

2

HOU:3559608.6

to continue employee programs on a postpetition basis, (iii) confirming right of Debtors to pay withholding and payroll-related taxes; and (iv) directing banks to honor prepetition checks for employee obligations.  In support of this Motion, the Debtors rely on the Declaration of Carl F. Giesler, Jr., Chief Executive Officer of Miller Energy Resources, Inc., *et al.,* in Support of Chapter 11 Petitions and First Day Motions, sworn to on October 1, 2015 (the "First Day Declaration").[2]  The First Day Declaration and other relevant case information is available on the following web site maintained by the Debtors' claims, balloting, and notice agent, Prime Clerk LLC, in connection with these chapter 11 cases: https://cases.primeclerk.com/millerenergy.com.  In further support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Sections 105, 363 and 507 of the Bankruptcy Code and Rule 6003 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3. On October 1, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Alaska (the "Bankruptcy Court").[3]

---

[2] Capitalized terms used herein and not otherwise defined have the meaning set forth in the First Day Declaration.

[3] As further discussed in the First Day Declaration, an Involuntary Petition was filed August 6, 2015 against Cook Inlet Energy, LLC.  Simultaneously with the filing of voluntary petitions for the other Debtors, Cook Inlet Energy, LLC has filed a Consent to Entry of the Order for Relief.  The First Day Declaration contains additional information relating to the involuntary petition.

3

HOU:3559608.6

4. The Debtors continue to operate their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The U.S. Trustee has not yet appointed any official committees in these cases, and no request has been made for the appointment of a trustee or examiner.

5. Contemporaneously with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of Cook Inlet Energy, LLC. A description of the Debtors' business, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the First Day Declaration which is being filed contemporaneously with this Motion. The Debtors hereby adopt and incorporate the First Day Declaration as if fully set forth herein.

## RELIEF REQUESTED

6. By this motion, the Debtors request entry of an order authorizing, but not directing, the Debtors to pay, continue or otherwise honor pre-petition obligations (collectively, the "Pre-petition Employee Obligations") to or for the benefit of their current employees (collectively, the "Employees") for salaries and other compensation and benefits under all plans, programs and policies implemented by the Debtors prior to the Petition Date (as set forth below, the "Employee Programs"). The Debtors seek immediate authority to make payments to Employees on account of Pre-petition Employee Obligations.[4]

7. Specifically, (i) under Sections 105(a) and 363(b)(1) of the Bankruptcy Code, the Debtors ask the Court to authorize, but not direct, the Debtors to pay any obligations arising

---

[4] The Debtors may separately seek authorization to implement new programs designed to incentivize employee performance, preserve employee morale, encourage continuing employment and otherwise ameliorate the effects on Employees in these Chapter 11 cases.

4

HOU:3559608.6

under the Employee Programs that were accrued or earned but unpaid as of the Petition Date; and (ii) under Section 363(c)(1) of the Bankruptcy Code, the Debtors request that the Court confirm their rights to continue each of the Employee Programs during the pendency of these cases, to make payments as required by the Employee Programs, and to make payments in connection with expenses incurred in the administration of any Employee Program.[5]

8. The Debtors also seek authorization to pay any and all local, state, and federal withholding and payroll-related or similar taxes relating to the Pre-petition Employee Obligations, including but not limited to, all withholding taxes, Social Security taxes and Medicare taxes. In addition, the Debtors seek confirmation that they are permitted to pay to third parties any and all amounts deducted from Employee paychecks for payments on behalf of Employees, including, without limitation, garnishments, charitable contributions, support payments, tax levies, benefit plans, insurance programs and other similar programs.

9. The Debtors further request that, with respect to any Employee Programs and Pre-Petition Employee Obligations that are administered or paid through a third-party administrator, agent, consultant or provider (the "Administrators"), the Debtors be expressly authorized to pay any pre-petition fees of the Administrators and to continue such payments post-petition in the ordinary course of their business in order to ensure the uninterrupted delivery of payments or other benefits to the Employees. Nutaaq Operating, LLC uses Copac as a third party payroll administrator.

10. In aid of the foregoing relief, the Debtors request that the Court authorize and direct all banks to receive, process, honor and pay any and all checks drawn on the payroll and

---

[5] Notwithstanding the foregoing, however, the Debtors do not seek to modify the terms of any Employee Programs by this Motion, and do not seek to assume or reject any Employee Program to the extent that such Employee Program is deemed to be an executory contract within the meaning of section 365 of the Bankruptcy Code. Moreover, the Debtors do not waive their right to modify or terminate any Employee Programs to the extent that such right exists under the terms of the Employee Programs.

HOU:3559608.6

other bank accounts used by the Debtors to satisfy its Pre-petition Employee Obligations, whether presented before, on or after the Petition Date.  The Debtors further request that the banks be authorized to rely on the representations of the Debtors as to which checks are subject to this Motion and that the banks only be required to honor the checks if sufficient funds are on deposit in the applicable accounts to cover such payments.

11.	The Debtors additionally request that the court authorize the Debtors to issue new post-petition checks to replace any checks that may be dishonored and to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a pre-petition check.

## **BASIS FOR RELIEF**

12.	The Debtors' ability to preserve their businesses and maintain value is dependent on the continued enthusiasm, services and expertise of their Employees.  Due to the disruption and uncertainty that typically accompanies a chapter 11 filing, the Debtors believe that the morale of their Employees may be adversely affected if they are not able to assure them that they will be fully paid for the work they have performed or will perform, whether before or after the Petition Date, and can rely on the benefits provided to them under the Employee Programs.  The Debtors have determined that continuation of the Employee Programs will be vital to their ability to preserve key Employee morale during the pendency of these chapter 11 cases and to reduce the level of Employee attrition that might otherwise occur.  Minimizing such attrition and the consequent disruption to the Debtors' business operations is critical to the Debtors' ability to preserve and enhance value for the benefit of the Debtors, their estates and all stakeholders.

13.	In addition, if the Debtors fail to pay the Pre-petition Employee Obligations in the ordinary course, their Employees will suffer extreme personal hardship and, in some cases, may be unable to pay their basic living expenses.  Such a result would have a highly negative impact

on employee morale and likely would result in unmanageable turnover, thereby resulting in immediate and irreparable harm to the Debtors and their estates. Honoring the Pre-petition Employee Obligations will minimize the level of disruption and preserve the loyalty of Employees so necessary for any successful reorganization.

### A. Payment of Pre-Petition Salary, Benefits and Other Compensation.

14. As of the Petition Date, the Debtors' aggregate workforce consists of approximately 95 Employees. Of those 95 Employees, (i) Miller Energy Resources, Inc. ("MER") employs 16 Employees; (ii) Cook Inlet Energy, LLC ("CIE") employs 43 Employees (24 of which are paid on an hourly basis and 2 of which are paid on a day rate basis); and (iii) Nutaaq Operating, LLC ("Nutaaq") employs 36 Employees (24 of which are paid on an hourly basis and 8 of which are paid on a day rate basis).

15. Of the Debtors' 95 Employees, 34 are employed on a salaried basis, 10 are paid on a day rate basis and 51 are employed on hourly basis. All full-time Employees, whether salaried or paid hourly, are eligible to participate in the Employee Programs (the "Eligible Employees"). The Debtors do not maintain a formal severance or retention program for their employees, though have historically paid severance on a case-by-case basis generally allowing employees terminated through no fault of their own to receive severance equal to three months pay. None of the Employees are covered by a collective bargaining agreement. Seven Employees, which consist primarily of senior management, have employment contracts.

16. The Debtors' senior management is comprised of 5 officers employed by MER (with one, Mr. Leland Tate, MER's Interim Chief Operating Officer, also serving as a Senior Vice President of Operations of CIE) and 1 officer (not counting Mr. Tate) employed by CIE (hereinafter referred to at times collectively as "Senior Management"), including the (i) chief

executive officer of MER, (ii) executive chairman of MER, (iii) senior vice president and chief financial officer of MER, (iv) senior vice president and general counsel of MER, (v) interim chief operating officer of MER and senior vice president of operations of CIE, and (vi) vice president and drilling manager of CIE. In the ordinary course of the Debtors' business, (i) Employees of MER and CIE earn and are paid salaries and/or other compensation on a weekly basis, every Friday for the then-current week; and (ii) Employees of Nutaaq earn and are paid salaries and/or other compensation on a semi-monthly basis on the 15th and 30th of each month in advance. As such, each period the Debtors are required to estimate the amount to be paid to hourly and day rate Employees. The Debtors then "true up" hourly and day-rate Employees for the actual time worked and make any adjustment in the subsequent pay check.

17. As a general matter, MER uses one payroll account for paying the salaries and related employment benefits to Employees every Friday for a total of 52 payments a year (collectively, the "Miller Payrolls"). Likewise, CIE uses one payroll account for paying salaries and related employment benefits to Employees every Friday for a total of 52 payments a year (the "CIE Payrolls"). Lastly, Nutaaq uses one payroll account for paying salaries and related employment benefits to Employees on the 15th and 30th of each month for a total of 24 payments a year (the "Nutaaq Payrolls", and together with the Miller Payrolls and the CIE Payrolls, the "Payrolls"). In addition, the Debtors are required by law to (i) match the Social Security and Medicare taxes; (ii) based on a percentage of gross payroll, pay additional amounts for state and federal unemployment insurance; and (iii) remit these payroll taxes to various taxing authorities (the "Employer Payroll Taxes").

18. On average, with the Debtors' current employee level, each Miller Payroll and CIE Payroll together, including all applicable Employer Payroll Taxes, totals approximately

8

$228,000.00. On average, with the Debtors' current employee level, each Nutaaq Payroll, including all applicable Employer Payroll Taxes, totals approximately $224,000.00. The Debtors request the authority to pay and continue to pay the regularly scheduled Payrolls, including Employer Payroll Taxes, in the ordinary course of business, including any pre-petition amounts that may have accrued but not become payable as of the Petition Date.[6]

19. In the ordinary course of business, the Debtors also cause certain Payroll deductions to be automatically made for Employee obligations, such as federal income taxes, Social Security and Medicare contributions, court-ordered garnishment and support payments, benefit plan insurance programs, and other similar programs (collectively, the "Deductions"). The Debtors' request authority to pay any prepetition amounts owed on account of Deductions and to continue such payments postpetition in the ordinary course.

20. To the extent that the Debtors are holding funds belonging to Employees that are collected from Employees and remitted to others, the Debtors maintain that such funds are not property of the bankruptcy estates. The amounts deducted are generally held in trust by the Debtors until they are forwarded to third parties. However, in an abundance of caution and to the extent that such funds relate to pre-petition periods, the Debtors seek authority to remit the applicable Deductions to appropriate governmental authorities and other third parties in accordance with the Debtors' regular policies and procedures.[7]

---

[6] The Debtors next Payroll are scheduled to paid on (i) October 9, 2015 for Miller, and CIE; and (ii) October 15 for Nutaaq. On information and belief, all employees will be owed less than the $12,475 limit set by section 507(a)(4) for prepetition wages, salaries, or commissions. Accordingly, the Debtors request payment of all amounts owed for prepetition salary to its Employees. Any payments to officers or directors of the Debtors will be done in accordance with Bankruptcy Local Rule 2016-2.

[7] The amounts collected by the Debtors as Deductions are not included in the calculation of the amounts entitled to priority under Section 507(a)(5) of the Bankruptcy Code, as they constitute the Employees' own funds, as opposed to "claims for contributions to employee benefit plans" within the meaning of that provision.

### B. Payment of Reimbursable Expenses

21. Prior to the Petition Date and in the ordinary course of business, the Debtors reimbursed Employees for reasonable expenses incurred in performing their jobs, including, but not limited to, business-related travel, lodging and meals (the "Reimbursable Expenses"). Reimbursable Expenses[8] were incurred on behalf of the Debtors in the ordinary course of business with the expectation that such expenses would be reimbursed in accordance with past practice. It would be inequitable and would cause harm to employee morale to deny reimbursement of such expenses. Moreover, it is essential to the continued operation of the Debtors' business that the Debtors be permitted to continue to reimburse Employees for such business-related Reimbursable Expenses incurred in the ordinary course of the Debtors' business, whether incurred by an Employee on a pre- or post-petition basis.

22. Under the Debtors' reimbursement policy, the Employees must submit expense reports, including receipts, or the reimbursement may be denied. Because Employees do not always submit reimbursement claims promptly, it is difficult to determine the exact outstanding amount at any one time, but these amounts are nominal. As of the Petition Date, the Debtors do not believe they have any pre-petition Reimbursable Expenses owed. The Debtors request authority to honor and pay any requests for Reimbursable Expenses incurred prior to the Petition Date which may be received after the Petition Date, and to continue their practice of reimbursing Employees for Reimbursable Expenses.

### C. Continuation and Payment of Pre-Petition Employee Benefits

23. The Debtors' Employees are eligible for various standard employee health and welfare benefits, including, without limitation, (a) medical, dental, vision and prescription drug

---

[8] The Reimbursable Expenses are separate and distinct from the expenses paid through the corporate credit cards described below.

10

HOU:3559608.6

coverage; (b) flexible spending accounts for health and dependent care under Section 125 of the Internal Revenue Code; (c) life insurance; (d) accidental death and dismemberment ("AD&D") insurance; (e) short-term and long-term disability benefits; and (f) a 401(k) savings plan (collectively, the "Employee Benefits"). The Debtors request authority to pay any prepetition amounts owed for Employee Benefits.

24. <u>Medical, Dental, Vision and Prescription Drug Coverage:</u> All full-time Employees (whether salaried or hourly) ("Eligible Employees") become eligible for benefits on either (a) for Eligible Employees of MER, the first day of the month following the date of their employment, or (b) for Eligible Employees of CIE and Nutaaq, the first or fifteenth day of the month following the date of their employment depending on the benefits. Eligible Employees of Miller are offered medical insurance through BlueCross BlueShield of Tennessee, and Eligible Employees of CIE and Nutaaq are offered medical insurance through Aetna Life Insurance Company. Medical plan participants are also offered prescription drug coverage through the respective providers. Vision coverage is provided to Eligible Employees of Miller through BlueCross BlueShield of Tennessee. Dental insurance is provided to all Eligible Employees for all Debtors through Delta Dental of Tennessee. For these standard health benefits, the Debtors pay 100% of the cost. On average, the Debtors pay: (i) $22,531 per month to BlueCross BlueShield of Tennessee and $102,402 per month to Aetna Life Insurance Company for health insurance; (ii) $270 per month to BlueCross BlueShield of Tennessee for vision coverage; and (iii) $10,069 per month to Delta Dental of Tennessee for dental coverage.

25. <u>Flexible Spending Accounts:</u> Eligible Employees may elect to enroll in flexible spending accounts ("FSAs") for health and dependent care. FSAs permit Eligible Employees to make pretax payroll contributions up to $5,000 per year for health care expenses for Eligible

11

HOU:3559608.6

Employees and eligible dependents. The employee's gross pay is reduced by an amount equal to the employee's contributions, as elected annually during the open enrollment period. TASC is a third-party administrator for the FSAs.

26. <u>Health Reimbursement Accounts:</u> Eligible Employees are enrolled in health reimbursement accounts ("HRAs") for health care expenses. HRAs cover medical expenses prior to the employee meeting the applicable deductible. TASC is a third-party administrator for the HRAs.

27. <u>Life and AD&D Insurance:</u> Eligible Employees are provided basic life insurance and AD&D coverage through Lincoln Financial Group with the cost paid by the Debtors. The life insurance is paid 100% by the Debtors and provided as follows: (i) for Eligible Employees of MER, benefits are three times salary up to max of $425,000, with dependent benefits of $20,000 for spouses and $10,000 for children; and (ii) for Eligible Employees of CIE and Nutaaq, benefits are one times salary for employees, with dependent benefits of $20,000 for spouses and $10,000 for children.

28. <u>Short-Term and Long-Term Disability:</u> Short-term disability benefits are provided for Eligible Employees who are temporarily unable to work due to injury or illness based on average weekly earnings. Short-term disability due to an accident begins the day of an accident, or on the fifteenth day after an illness and is provided for up to 26 weeks. The short-term disability provides employees 60% of their salary up to $2,000 per week.

29. The Debtors also provide long-term disability coverage when an Eligible Employee's illness or disability lasts 180 days or longer. The long-term disability replaces 60% of earnings to a maximum of $15,000 per month.

30. <u>The 401(k) Savings Plan</u>: All Eligible Employees of Miller or CIE can enroll in the Debtors' 401(k) Profit plan provided through Voya. All Eligible Employees of Nutaaq can enroll in the 401(k) Profit plan provided through Transamerica. Participating Employees may defer a portion of their annual compensation, subject to maximum limitations set by the Internal Revenue Service. Employees are vested in all contributions from the day they begin contributing to the 401(k) Plan. For employees of Miller and CIE, the Debtors do not match any employee contributions. For employees of Nutaaq, the Debtors match the employee's contribution dollar for dollar up to the first 3% of eligible compensation. These matching contributions are remitted per pay period for each of the Payrolls. As of the Petition Date, the Debtors' obligation for pre-petition matching 401(k) contributions is estimated to be $6,531 per Payroll period. The Debtors ask the Court to authorize, but not direct, the payment of all pre-petition and post-petition amounts attributable to the 401(k) Plan.

31. As of the Petition Date, the Debtors were obligated to pay certain premium contributions to or provide benefits under the foregoing programs, plans, and policies. The Debtors estimate the average monthly cost for Eligible Benefits and related administrative fees is $154,369.49. That total is calculated upon the following summary of estimated monthly fees as follows (i) Blue Cross and Blue Shield of Tennessee is owed $22,530.75 for medical insurance and vision insurance; (ii) Aetna Life Insurance is owed $102,402.33 for medical insurance; (iii) Delta Dental is owed $10,068.67 for dental insurance; (iv) Lincoln Financial is owed $19,367.74 for life insurance; and (v) $0 owed under its 401(k) program, which includes both employee and employer contributions (the Debtors share of such contributions is approximately $13,000 per month).

32. By this Motion, the Debtors seek authority to pay in the ordinary course of business all amounts owed by the Debtors for expenses and fees relating to Employee Benefits, including those incurred prior to the Petition Date.

### D. Paid Time Off Benefits

33. All Eligible Employees receive paid time off ("PTO") for vacation, personal, family illness, or sick days as part of their overall compensation. The PTO benefits are calculated based on the anniversary date, which is the first day the Employee reported to work. Employees are only eligible to accrue PTO while on active status. In general, employees are given ten (10) days of sick leave and between two and four weeks of paid vacation depending on job position and seniority. Certain Employees are entitled to carry these amounts forward into the next year, to the extent it is not used, depending on such Employees terms of employment, of PTO benefits to the next year. PTO not used after two years expires. The Debtors do not "cash-out" unused PTO or sick leave.

34. The Debtors anticipate that Employees will utilize PTO post-petition including certain PTO that may have accrued before the Petition Date. The Debtors seek authority (but not direction) to honor all earned PTO in the ordinary course consistent with the existing guidelines and policies described in this section, regardless of whether it accrued during the pre- or post-petition period.

### E. Other Programs

35. <u>Workers' Compensation Program:</u> The Debtors maintain insurance for workers' compensation claims in compliance with applicable state and federal laws and numerous contracts with customers. This workers' compensation insurance is provided by Liberty Mutual Ins. Co., and the premium for that policy is paid annually by the Debtors in the amount $10,811,

14

HOU:3559608.6

subject to adjustments throughout the year. No part of the premium can be paid by the Employee. The Debtors request the authority to satisfy workers' compensation obligations, including those incurred prior to the Petition Date, and to pay premiums in the ordinary course.

36. <u>Cellular Phone Program:</u> Additionally, the Debtors provide a cellular phone program whereby certain employees are provided with a company cellular phone or receive reimbursement for a portion of their personal cell phone costs (the "Cellular Program"). For the month of September, the costs of the Cellular Phone Program to the Debtors was $7,475.70. The Debtors request authority to satisfy pre-petition obligations under the Cellular Program and to continue such program post-petition.

37. <u>Professional License Program.</u> Certain of the Debtors' employees, such as accountants and attorneys, are required to maintain professional licenses and pay certain dues associated with such licenses. Typically, the Debtors have reimbursed such employees for the costs of maintaining their licenses (the "Professional License Program"). Such costs is typically $29,465 per year. The Debtors request authority to satisfy pre-petition obligations under the Professional License Program and to continue such program post-petition.

38. <u>Corporate Credit Cards:</u> Various employees within the company are provided corporate credit cards to cover travel related expenses such as airfare, hotels, meals and incidentals. In addition, they are allowed to use the card for incidental business expenses and for business related meals and activities. The employee is still required to provide accounts payable with their credit card receipts and to document the business purpose of the expense. The current amount owed on the corporate credit card is approximately $1,948.85 and payment of such amounts is secured by a cash deposit. The Debtors request authority to satisfy any pre-petition amounts owed on the corporate credit card and continue use of such program post-petition.

HOU:3559608.6

**F.  Direction to Banks Regarding Pre-petition Checks and Electronic Transfers**

39.  The Debtors request that, to the extent of funds on deposit, all applicable banks and other financial institutions be directed to receive, process, honor and pay all checks or electronic transfers drawn on any of the Debtors' accounts relating to the Employee Obligations, deductions, employment taxes, independent contractors and temporary workers as outlined above, whether presented before or after the Petition Date.  The Debtors request that such banks be authorized and directed to rely on the representations of the Debtors as to which checks are in payment of the Pre-petition Employee Obligations.  To the extent that any such checks are refused payment, the Debtors additionally request authority to issue replacement checks and to reimburse their Employees from any loss resulting from the dishonoring.

## APPLICABLE AUTHORITY

40.  Pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, certain claims for compensation are accorded priority in payment in an amount not to exceed $12,475 for each employee (to the extent such amounts accrued within 180 days of the petition date). The overwhelming majority of employees are owed compensation amounts for prepetition services that are within the statutory priority cap of Sections 507(a)(4) and 507(a)(5).  Thus, granting the relief requested is consistent with the Bankruptcy Code's purpose of ensuring the employees are paid in full up to the statutorily imposed limit due to the priority status of their claims.

41.  To the extent that certain Prepetition Employment Obligations are not entitled to priority treatment, or that particular Employees are owed more that the priority amount of $12,475 in wages, salaries, vacation pay and sick leave pay and contributions to employee benefit plans as of the Petition Date, the Debtors believe that the payment of such amounts still

would be authorized under sections 363(b) and 105(a) of the Bankruptcy Code, as set forth below.

42. This Court has authority to grant the relief requested herein pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, Section 105(a) of the Bankruptcy Code allows the Court to authorize payments on account of certain pre-petition claims when necessary. *See In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."). This is generally referred to as the "necessity of payment rule" or the "doctrine of necessity." *See In re NVR, L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (stating that, under Section 105(a), a court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"); *In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that the necessity of payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus").[9]

---

[9] *See also In re Fin. News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991) (pre-petition claims may be paid when so doing is "critical to the debtor's reorganization"); *In re Eagle-Pitcher Indus.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (payment must be "necessary to avert a serious threat to the Chapter 11 process"); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (payment necessary to "permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately") (quoting *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987)).

17

HOU:3559608.6

43. The continued service and dedication of the Employees is critical to the Debtors to maintain value of its assets as it moves forward with a sale process. Courts have invoked their section 105(a) equitable powers on numerous occasions to authorize the payment of prepetition employee claims when, as in these cases, nonpayment or delay would damage a debtor's business. For example, in *In re Equalnet Commc'ns. Corp.*, the Court explained:

> [C]ertain types of claims enjoy priority status in addition to being sometimes critical to the on going nature of the business. For instance, employee wage claims and certain tax claims are both priority claims in whole or in part. The need to pay these claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted.

258 B.R. 368, 370 (Bankr. S.D. Tex. 2000); *see also In re CEI Roofing, Inc*., 315 BR 50, 61 (Bankr. N.D. Tex. 2004) (citing *Equalnet Commc'ns. Corp.* and finding that the court has the authority pursuant to §§ 105 and 507(a)(3) and (4) to authorize the payment of priority wage claims and employee benefits prior to the confirmation of a plan); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (stating willingness "to apply the doctrine of necessity . . . in appropriate cases").

44. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty (20) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Based on the foregoing, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support the requested relief being granted immediately.

45. This Court and courts in other jurisdictions have granted similar motions for the payment of prepetition employee claims. *See, e.g.*, *In re Catholic Bishop of Northern Alaska*, Case No. 08-00110-DMD (Bankr. D. Alaska Mar. 5, 2008) [Docket No. 57] (authorizing continued payment of employee benefits in the ordinary course); *In re Samson Resources Corp.*,

Case No. 15-11934-CSS (Bankr. D. Del. Sept. 22, 2015) [Docket No. 86]; *In re Sabine Oil & Gas Corp*, Case No. 15-11835-SCC (Bankr. S.D.N.Y. Aug. 10, 2015) [Docket No. 148]; *In re Dune Energy, Inc.*, Case No. 15-10-336-HCM (Bankr. W.D. Tex. Mar. 10, 2015) [Docket No. 34]; *In re Endeavour Operating Corp.*, Case No. 14-12308-KJC (Bankr. D. Del. Oct. 15, 2014) [Docket No. 55]; *In re ATP Oil & Gas Corp.*, Case No. 12-36187 (Bankr. S.D. Tex. Aug. 21, 2012) [Docket No. 136].

## NOTICE

46. Notice of this Motion has been given to the parties on the proposed Master Service List, which includes (a) the Office of the United States Trustee for the District of Alaska; (b) all known or alleged secured creditors; (c) the 30 largest unsecured creditors of the Debtors on a consolidated basis; (d) Apollo Investment Corp.; (e) the United States Attorney's Office for the District of Alaska; (f) the Securities and Exchange Commission; and (g) the Internal Revenue Service. In light of the expedited nature of the relief requested herein and the irreparable harm to the Debtors that may ensue if the relief requested in not granted, the Debtors submit that no further notice need be given and that the notice provided by the Debtors is sufficient.

## CONCLUSION

The Debtors respectfully request that the Court enter an order (i) authorizing them to pay or otherwise honor the Pre-petition Employee Obligations; (ii) confirming their right to continue the Employee Programs and all Benefits on a postpetition basis; (iii) confirming that the Debtors are permitted to pay any and all local, state and federal withholding and payroll-related or similar taxes relating to prepetition periods; (iv) authorizing the Debtors to pay any prepetition claims owing to the payroll administrator used by the Debtors; (v) directing all banks to honor

prepetition checks for payment of the Pre-petition Employee Obligations and (vi) granting such other relief as is just and proper.

Dated: October 1, 2015     Respectfully submitted,

ANDREWS KURTH LLP

By:     /s/ Timothy A. ("Tad") Davidson II
         Timothy A. ("Tad") Davidson II
         Texas Bar No. 24012503
         David A. Zdunkewicz
         Texas Bar No. 22253400
         Joseph P. Rovira
         Texas Bar No. 24066008
         600 Travis, Suite 4200
         Houston, Texas 77002
         Telephone: (713) 220-4200
         Facsimile: (713) 220-4285
         taddavidson@andrewskurth.com
         dzdunkewicz@andrewskurth.com
         josephrovira@andrewskurth.com

         David H. Bundy
         Alaska Bar No. 7210043
         DAVID H. BUNDY, P.C.
         310 K Street, Suite 200
         Anchorage, Alaska 99501
         Telephone: (907) 248-8431
         Facsimile: (907) 248-8434
         dhb@alaska.net

         PROPOSED ATTORNEYS FOR DEBTORS

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 1, 2015, the foregoing document was served by ECF on the parties registered to receive electronic notices.

By:     /s/ Timothy A. ("Tad") Davidson II
         Timothy A. ("Tad") Davidson II

HOU:3559608.6