David H. Bundy (AK Bar 7210043)
DAVID H. BUNDY, P.C.
310 K Street, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 248-8431
Facsimile: (907) 248-8434

Timothy A. ("Tad") Davidson II *(admitted pro hac vice)*
David A. Zdunkewicz *(admitted pro hac vice)*
Joseph P. Rovira *(admitted pro hac vice)*
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285

Proposed Attorneys for the Debtors

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Cook Inlet Energy, LLC; | § | Case No. 15-00236 |
| Miller Energy Resources, Inc.; | § | Case No. 15-00313 |
| Miller Drilling, TN LLC; | § | Case No. 15-00314 |
| Miller Energy Services, LLC; | § | Case No. 15-00315 |
| Miller Energy GP, LLC; | § | Case No. 15-00316 |
| Miller Rig & Equipment, LLC; | § | Case No. 15-00318 |
| East Tennessee Consultants, Inc.; | § | Case No. 15-00319 |
| East Tennessee Consultants II, L.L.C.; | § | Case No. 15-00320 |
| Anchor Point Energy, LLC; | § | Case No. 15-00321 |
| Savant Alaska, LLC; and | § | Case No. 15-00322 |
| Nutaaq Operating LLC.[1] | § | Case No. 15-00323 |
| | § | |
| Debtors. | § | Joint Administration Requested |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Cook Inlet Energy, LLC, an Alaska limited liability company (6643); Miller Energy Resources, Inc., a Tennessee corporation (8629); Miller Drilling, TN LLC, a Tennessee limited liability company (8891); Miller Energy Services, LLC, a Delaware limited liability company (8670); Miller Energy GP, LLC, a Delaware limited liability company (0999); Miller Rig & Equipment, LLC, a Delaware limited liability company (8727); East Tennessee Consultants, Inc., a Tennessee corporation (3108); East Tennessee Consultants II, L.L.C., a Tennessee limited liability company (0107); Anchor Point Energy, LLC, an Alaskan limited liability company (7946); Savant Alaska, LLC, a Colorado limited liability company (0579); and Nutaaq Operating LLC, an Alaska limited liability company (2908).

**DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS, BUSINESS FORMS AND CASH MANAGEMENT SYSTEM; (II) WAIVING REQUIREMENTS OF SECTION 345 OF THE BANKRUPTCY CODE; AND (III) AUTHORIZING CONTINUATION OF <u>INTERCOMPANY TRANSACTIONS</u>**

**A HEARING WILL BE CONDUCTED ON THIS MATTER AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA, 605 W. 4th AVENUE, SUITE 138, ANCHORAGE, ALASKA 99501. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT. IN ADDITION TO FILING YOUR RESPONSE WITH THE CLERK, YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE AND TO ANY OTHER PARTY SPECIFIED IN THE NOTICE. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED WITHOUT A HEARING.**

**EMERGENCY RELIEF AND AN EXPEDITED HEARING HAVE BEEN REQUESTED. IF THIS COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS TIME TO RESPOND. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT AND IMMEDIATELY SERVE A COPY OF YOUR RESPONSE ON COUNSEL FOR THE DEBTORS AND ON ANY OTHER PARTY SPECIFIED IN THE NOTICE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

Miller Energy Resources, Inc., *et al.*, debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors"), hereby file this emergency motion (the "Motion") for entry of an order under 11 U.S.C. §§ 105, 345, 363, 364, 1107 and 1108 (i) authorizing the continued use of Debtors' existing bank accounts, business forms and cash management system;

(ii) waiving requirements of section 345 of the Bankruptcy Code; and (iii) authorizing the continuation of certain intercompany transactions. In support of this Motion, the Debtors rely on the Declaration of Carl F. Giesler, Jr., Chief Executive Officer of Miller Energy Resources, Inc., *et al.*, in Support of Chapter 11 Petitions and First Day Motions, sworn to on October 1, 2015 (the "First Day Declaration").[2] The First Day Declaration and other relevant case information is available on the following web site maintained by the Debtors' claims, balloting, and notice agent, Prime Clerk LLC, in connection with these chapter 11 cases: https://cases.primeclerk.com/millerenergy.com. In further support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Sections 105, 345, 363, 364, 1107, and 1108 of the Bankruptcy Code.

## BACKGROUND

3. On October 1, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Alaska (the "Bankruptcy Court").[3]

---

[2] Capitalized terms used herein and not otherwise defined have the meaning set forth in the First Day Declaration.

[3] As further discussed in the First Day Declaration, an Involuntary Petition was filed August 6, 2015 against Cook Inlet Energy, LLC. Simultaneously with the filing of voluntary petitions for the other Debtors, Cook Inlet Energy, LLC has filed a Consent to Entry of the Order for Relief. The First Day Declaration contains additional information relating to the Involuntary Petition.

3

4.     The Debtors continue to operate their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The U.S. Trustee has not yet appointed any official committees in these cases, and no request has been made for the appointment of a trustee or examiner.

5.     Contemporaneously with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of Cook Inlet Energy, LLC. A description of the Debtors' business, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the First Day Declaration, which is being filed contemporaneously with this Motion. The Debtors hereby adopt and incorporate such description as if fully set forth herein.

**RELIEF REQUESTED**

6.     By this Motion, the Debtors seek entry of an order (i) authorizing the Debtors to use existing accounts as "debtor-in-possession" accounts in which all accounts receivable and other amounts owed to the Debtors shall be paid and deposited; (ii) authorizing the continued use of Debtors' existing bank accounts, business forms and cash management system; (iii) waiving requirements of section 345 of the Bankruptcy Code; and (iv) authorizing the continuation of certain intercompany transactions. In summary, the Debtors request that they be authorized to maintain their current cash management system.

**BASIS FOR RELIEF**

7.     Miller Energy Resources, Inc. ("MER") owns 100% of (i) Miller Drilling, TN LLC; (ii) Miller Energy Services, LLC; (iii) Miller Energy GP, LLC; (iv) Miller Rig & Equipment, LLC; (v) Cook Inlet Energy, LLC ("CIE"); (vi) East Tennessee Consultants, Inc.; (vii) East Tennessee Consultants II, L.L.C.; and (viii) Savant Alaska, LLC. Cook Inlet Energy,

4

LLC currently owns 100% of Anchor Point Energy, LLC. Savant Alaska, LLC currently owns 100% of Nutaaq Operating, LLC.

8. As of the Petition Date, the Debtors maintained a cash management system that permits it to fund its ongoing operations. The Debtors' prepetition cash management system required, among other things, the daily movement of funds among and between the Debtors and various bank accounts.

### A. The Existing Bank Accounts

9. Prior to the commencement of their chapter 11 cases, in the ordinary course of their businesses, the Debtors maintained multiple bank accounts (collectively, the "Bank Accounts"). A listing of the Bank Accounts is provided on **Exhibit A** attached hereto as well as a description of the use of each Bank Account. The Debtors believe that all of the Bank Accounts are in financially stable banking institutions.

10. The Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise administration of chapter 11 cases. These guidelines require chapter 11 debtors to, among other things, (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for payment of taxes including payroll; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks for all debtor-in-possession accounts which bear the designation "Debtor-In-Possession," the bankruptcy case number and the type of accounts. The Debtors believe that implementing these guidelines would require a substantial modification, if not abandonment, of their prepetition cash management system.

11. The Bank Accounts are part of the carefully-constructed and automated cash management system that ensures the Debtors' ability to efficiently monitor and control all of their cash (as more fully described below). The requirement that the Debtors close all existing accounts and open all new accounts would disrupt the Debtors' operations and result in delays in payments to employees, customers and creditors thereby impeding the Debtors' ability to ensure as smooth a transition into chapter 11 as possible.

12. The Debtors believe that their existing cash management system provides a cost-effective and efficient means of managing the Debtors' finances and the maintenance of such a system will benefit all creditors by reducing day-to-day operating expenses of the Debtors' estates. Accordingly, as set forth below, the Debtors submit that failure to continue the cash management system would disrupt the Debtors' operations and impose a financial burden on the estates, while providing little benefit, if any, to the Debtors' estates and creditors.

13. Any payments that are received in the Debtors' accounts will be treated as the cash collateral of the Second Lien Lenders and the Debtors will only be allowed to use such amounts either with the consent of the Second Lien Lenders or pursuant to order of this Court and any approved cash collateral budget. The Debtors believe that this system will substantially comply with the Office of the United States Trustee's operating guidelines and provide the Debtors' secured creditors with all of the protections of its cash collateral that they are entitled to under the Bankruptcy Code being that the Debtors will only be permitted to use the cash in the Bank Accounts if the pursuant to order of the Court.[4]

---

[4] The Debtors have filed concurrently herewith a Motion to Approve DIP Financing and Use of Cash Collateral.

6

HOU:3552478.8

**B.     The Debtors Should be Granted Authority to Continue to Use Existing Business Forms and Checks**

14.     In order to minimize expenses to their estates, the Debtors also request that they be authorized to continue to use all correspondence, business forms and checks existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors-in-possession.

15.     As a result of the notices sent by the Debtors, and the size of and publicity surrounding these cases, parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as chapter 11 debtors-in-possession.  Changing checks, correspondence and business forms would be expensive and burdensome to the Debtors and disruptive to the Debtors' business operations and would provide little real benefit to the parties with whom the Debtors do business.  For these reasons, the Debtors request that they be authorized to use existing checks and business forms without being required to place the label "debtor-in-possession" on each.

**C.     The Debtors Should Be Authorized to Continue to Use their Existing Cash Management System**

16.     As stated above, the Debtors maintain a carefully-constructed and automated cash management system that ensures the ability of the Debtors to monitor and control all of their cash.  Accordingly, in order to avoid disruption of their operations and ensure an orderly transition into chapter 11, the Debtors request authorization to continue to use their existing cash management system (as it may be modified by the Debtors in the ordinary course of business).

17.     The Debtors' bank accounts are listed on **Exhibit A** and the flow of funds through the cash management system is detailed on the charts attached hereto as **Exhibit B**  and described as follows:

7

- The SunTrust accounts and First National Bank of Alaska listed on **Exhibit A** serve as the primary operating account for the Debtors. As depicted and described in the charts attached hereto as **Exhibit B**, revenue from operations and State Tax Credits are deposited into and transferred among these accounts to pay operating expenses, vendors, and payroll.

- The three Fifth Third Bank accounts and the KeyBank accounts listed on **Exhibit A** are accounts which were previously used in the Debtors operations. As of the date of this filing, the Fifth Third Bank and KeyBank accounts are still open but the balance held in these accounts is low and not used in operations. The Debtors are working on closing these accounts and transferring any funds to other operational accounts.

- The Debtors do not use the two Citizens First Bank accounts. These accounts are legacy accounts which the Debtors are seeking to close. Similarly, the Debtors are working on closing the Colorado State Bank and Trust checking account held by Savant Alaska LLC as it is no longer used in operations

- The Progressive Savings Bank account was used by East Tennessee Consultants, Inc. for gas revenue and distributions. This account is only active to the extent that it is used for outstanding checks to pay revenues to outside interest owners that have not yet cleared.

18. Additionally, as shown on **Exhibit A,** the Debtors have numerous investment and deposit bank accounts providing various forms of security for the following matters:

- Accounts labeled "Abandonment" are accounts that are used for liabilities related to plugging and abandonment of wells in Tennessee and Alaska. Each well has its own abandonment account in which a bond is placed as required by state law.

- Accounts labeled as "Work Commitment" are accounts in which the Debtors deposit a bond derived from agreements with the state of Alaska (i.e., the landowner) specific to the prospect. The work commitments guarantee specific performance under the lease or license—i.e. the expenditure of funds toward exploration or the drilling of a specific well.

- The accounts labeled "General Liability" investment accounts are accounts for oil and gas bonds with the State of Alaska. Account x2852 contains $100,000 and account x2843 contains $500,000.

- The Savant Alaska LLC letter of credit collateral account at Colorado State Bank and Trust does not have any outstanding letters of credit.

8

HOU:3552478.8

19. The cash management system procedures the Debtors use constitutes ordinary, usual and essential business practice and are consistent with those used by other major corporate enterprises. The cash management system provides significant benefits to the Debtors, including the ability to (a) trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable; (b) control corporate funds centrally; (c) minimize idle cash; and (d) reduce administrative expenses by facilitating the movement of funds and the development of more timely and accurate balance presentment information. As stated above, requiring the Debtors to adopt new, segmented cash management systems would be expensive and disruptive. Consequently, maintenance of the existing cash management system during these chapter 11 cases is in the best interest of all the Debtors, their estates and the creditors.

**D.     Waiver of Compliance with 11 U.S.C. § 345**

20. Section 345 of the Bankruptcy Code provides that, *inter alia*, a "trustee in a case under this title may make such deposit or investment of money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Section 345 further provides that, unless the Bankruptcy Court orders otherwise, for deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," the debtor must require the institution with which the money is deposited or invested to either post a bond or deposit "securities of the kind specified in Section 9303 of title 31." 11 U.S.C. § 345(b).

21. The Debtors have no reason to believe at this time that the cash management system, as described above, does not comply with Section 345 of the Bankruptcy Code. Nevertheless, to the extent that it may not comply with Section 345 or any other requirements of

9

the U.S. Trustee, the Debtors request that the Bankruptcy Court waive any such noncompliance to avoid the disruption attendant in alerting our customers and the State of Alaska of the need to remit payments to alternative accounts.  To the extent that the Debtors' investment practices vary from those required by the U.S. Trustee Guidelines and the Bankruptcy Code, the Debtors maintain that sufficient cause exists to waive the investment requirements of Section 345(b) because these accounts are being used to secure obligations, primarily to the State of Alaska, arising from the Debtors' routine operations, including plugging and abandonment obligations and work commitments, among others.

### E. The Debtors Should Be Authorized to Continue Certain Intercompany Transactions

22. The individual Debtors regularly engage in intercompany financial transactions in the ordinary course of their respective businesses with each other, resulting in discrete transfers in the appropriate intercompany accounts.  The majority of these transfers are between MER and CIE, with MER and CIE covering cash shortfalls of the other Debtors from time to time.  The Debtors account for and track each of these transfers in the ordinary course and prepare an intercompany reconciliation at the end of each month.

23. The Debtors anticipate that the intercompany transactions will continue following the Petition Date.  Because the Debtors engaged in the intercompany transactions on a regular basis before the Petition Date and such transactions are common for enterprises like the Debtors, the Debtors believe that such transactions are ordinary course, within the meaning of section 363(c)(1) of the Bankruptcy Code, and thus do not require the Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions.

24. To ensure that each individual Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtors will continue to maintain records of such transfers, including records of all current intercompany accounts receivable and payable, with balances existing as of the Petition Date. Accordingly, the Debtors submit that the continuation of the intercompany transactions is in the best interests of the Debtors' estates and creditors.

## APPLICABLE AUTHORITY

25. Bankruptcy courts regularly recognize that the strict enforcement of bank account and business form requirements set forth in the United States Trustee operating guidelines does not necessarily serve the purposes of chapter 11, particularly where the entities involved form a large and complex organization.

26. This Court and bankruptcy courts in other jurisdictions have granted similar relief to that requested herein, including the waiver of the U.S. Trustee guidelines regarding the debtor-in-possession designation on checks and business forms and a debtor's continued use of its existing cash management procedures and policies. *See, e.g.*, *In re Catholic Bishop of Northern Alaska*, Case No. 08-0010 (Bankr. D. Alaska Apr. 16, 2008) [Docket No. 125] (authorizing use of existing cash management system and accounts and not requiring the "debtor-in-possession" designation on forms/checks but the U.S. Trustee did not waive Section 345 requirements); *In re Samson Resources Corp., et al.*, Case No. 15-11934-CSS (Bankr. D. Del. Sept. 22, 2015) [Docket No. 87]; *In re Sabine Oil & Gas Corp.*, Case No. 15-11835-SCC (Bankr. S.D.N.Y. Sept. 10, 2015) [Docket No. 315]; *In re ATP Oil & Gas Corp.*, Case No. 12-36187-MPI (Bankr. S.D. Tex. Aug. 21, 2012) [Docket No. 135] (authorizing similar relief but not authorizing checks without the "debtor-in-possession" designation and not authorizing nightly cash sweep).

11

## NOTICE

27. Notice of this Motion has been given to the parties on the proposed Master Service List, which includes (a) the Office of the United States Trustee for the District of Alaska; (b) all known or alleged secured creditors; (c) the 30 largest unsecured creditors of the Debtors on a consolidated basis; (d) Apollo Investment Corp.; (e) the United States Attorney's Office for the District of Alaska; (f) the Securities and Exchange Commission; and (g) the Internal Revenue Service. In light of the expedited nature of the relief requested herein and the irreparable harm to the Debtors that may ensue if the relief requested in not granted, the Debtors submit that no further notice need be given and that the notice provided by the Debtors is sufficient.

## CONCLUSION

The Debtors respectfully request that the Court enter interim and final orders (i) authorizing the continued use of the Debtors' existing bank accounts, business forms and cash management system; (ii) waiving the requirements of Section 345 of the Bankruptcy Code authorizing the Debtors to enter into intercompany transactions pursuant to their prepetition cash management system; and (iii) granting such other and further relief as this Court deems just and proper.

HOU:3552478.8

Dated: October 1, 2015                    Respectfully submitted,

                                                    ANDREWS KURTH LLP

By:    /s/ Timothy A. ("Tad") Davidson II
        Timothy A. ("Tad") Davidson II
        Texas Bar No. 24012503
        David A. Zdunkewicz
        Texas Bar No. 22253400
        Joseph P. Rovira
        Texas Bar No. 24066008
        600 Travis, Suite 4200
        Houston, Texas 77002
        Telephone: (713) 220-4200
        Facsimile:  (713) 220-4285
        taddavidson@andrewskurth.com
        dzdunkewicz@andrewskurth.com
        josephrovira@andrewskurth.com

        David H. Bundy
        Alaska Bar No. 7210043
        DAVID H. BUNDY, P.C.
        310 K Street, Suite 200
        Anchorage, Alaska  99501
        Telephone:  (907) 248-8431
        Facsimile:   (907) 248-8434
        dhb@alaska.net

        PROPOSED ATTORNEYS FOR
        DEBTORS

### **CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that on the 1st day of October, 2015, the foregoing document was served by ECF on the parties registered to receive electronic notices.

                                    By:    /s/ Timothy A. ("Tad") Davidson II
                                                Timothy A. ("Tad") Davidson II

HOU:3552478.8