Erik LeRoy
Erik LeRoy, P.C.
500 L St., Suite 302
Anchorage, Alaska 99501
(907) 277-2006
Counsel for Baker Hughes Oilfield Operations, Inc.,
Baker Petrolite, LLC, Schlumberger Technology
Corporation and M-I, LLC d/b/a MI-SWACO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ALASKA

| In re: | § | Chapter 11 |
|---|---|---|
| | § | |
| Cook Inlet Energy, LLC; | § | Case No. 15-00236 |
| Miller Energy Resources, Inc.; | § | Case No. 15-00313 |
| Miller Drilling, TN LLC; | § | Case No. 15-00314 |
| Miller Energy Services, LLC; | § | Case No. 15-00315 |
| Miller Energy GP, LLC; | § | Case No. 15-00316 |
| Miller Rig & Equipment, LLC; | § | Case No. 15-00318 |
| East Tennessee Consultants, Inc.; | § | Case No. 15-00319 |
| East Tennessee Consultants II, L.L.C.; | § | Case No. 15-00320 |
| Anchor Point Energy, LLC; | § | Case No. 15-00321 |
| Savant Alaska, LLC; and | § | Case No. 15-00322 |
| Nutaaq Operating LLC.[1] | § | Case No. 15-00323 |
| | § | |
| Debtors. | § | |

**PETITIONING CREDITORS' RESPONSE TO DEBTORS' EMERGENCY MOTION
FOR ORDER AUTHORIZING CONTINUED USE OF BANK ACCOUNTS, WAIVING
SECTION 345 REQUIREMENTS AND AUTHORIZING CONTINUATION OF
INTERCOMPANY TRANSACTIONS**
**(Responds to Dkt. 57)**

Baker Hughes Oilfield Operations, Inc., Baker Petrolite, LLC, Schlumberger Technology Corporation, and M-I, LLC d/b/a MI-SWACO ("Petitioning Creditors") respond to the Debtors' Emergency Motion For Order Authorizing Continued Use of Bank Accounts, Waiving Section 345 Requirements and Authorizing Continuation of Intercompany Transactions ("Subject Motion") as follows:

1. On August 6, 2015, the Petitioning Creditors filed an involuntary petition against

Cook Inlet Energy, LLC ("CIE").  That petition was clearly meritorious, but CIE delayed consent to an order for relief.  It was not until October 1, 2015 that CIE consented to entry of an order for relief, followed by the voluntary filings of ten other affiliated entities.

2. First, Petitioning Creditors do not oppose any order granting Debtors the authority to continue to use their accounts, checks and forms.

3. Second, Petitioning Creditors do oppose Debtors' request to be allowed to continue its intercompany transfers.

4. The Subject Motion is really asking for de facto substantive consolidation of the Debtors.  This request is more disturbing because it is made without any disclosures having been made concerning the assets, income and debt of each of these affiliates forcing Petitioning Creditors to extrapolate the magnitude of the Debtors' financial distress from a Declaration of Mr. Giesler (Dkt. 61), which itself intentionally blurs the distinctions between the affiliates. The Debtors will use CIE income to pay MER employees and the employees of other affiliates (Dkt 56) and the executive compensation of four of the five executives for whom notice of taking compensation has been filed. (Dkt. 71).  This should not be allowed.  MER and its other non-CIE affiliates can request DIP financing with which to pay those bills, but CIE should not be paying those bills.

5. The Debtors represent that "[t]o insure that each individual Debtor will not, at the expense of its creditors, fund the operation of another entity, the Debtors will continue to maintain records of such transfers, including records of all current intercompany account receivables and payables, with balances existing as of the Petition Date." Dkt 57 ¶ 24.  Petitioning Creditors do not understand how keeping a record of CIE's transfers to MER is going to insure that CIE's creditors will not fund the operations of MER and its other non-producing affiliates.

6. Based upon the representations of Mr. Giesler in his Declaration, CIE appears to be

the only debtor making money. None of the eleven debtors are drilling anything at the moment. MER owns no drilling rigs. CIE owns three drilling rigs, one of which is committed to the Osprey platform in the Cook Inlet and two which sit idle in Southcentral Alaska and should be sold. CIE (but not the other affiliated entities) appears to have post-petition daily working interest barrels of oil equivalent 3,700 from its three Cook Inlet and Kenai Peninsula fields. Dkt 61, Giesler Declaration at ¶¶11-16. Savant has approximately 690 working interest barrels of oil equivalent per day, but this is from the Badami field, an expensive to operate North Slope field and almost certainly does not cover its own costs.

7. Not only does it appear that CIE is the only Debtor with more income than expenses, it is also the only Debtor waiting on the payment of an approximately $14.8 million tax credit likely to occur today.

8. Practically, Debtors are proposing that CIE's income be distributed among the Debtors and that its record keeping will insure that CIE does not fund the operations of the unproductive affiliates, including MER. First, this is not a substantively consolidated collection of affiliated cases, and, consequently, CIE's income cannot be used to pay the debts of the other affiliates. Second, Debtors representation that its record keeping will insure that CIE does fund the operations of the non-productive affiliates, including MER, is absurd on its face.

9. Debtors think their cost management system "will benefit all creditors by reducing day to day operating expenses of the Debtors' estates". Dkt. 57, ¶ 12. That might be true if this were a substantively consolidated collection of affiliated cases, which appears to be Debtors' long range objective. But it is fundamentally unfair to the CIE creditors.

10. Debtors assure the Court that any payments into any account will be treated as cash collateral of the Second Lien Creditors. Dkt. 57, ¶ 13. But Debtors, not having filed schedules, and

3

requesting additional time in which to file schedules, are providing no factual information about its "Second Lien Creditors". It is possible that no one has a perfected security interest in the approximately $17 million tax credit soon to be paid to CIE. And, at the moment, no one has a cash collateral interest in the daily proceeds of the 3,700 of CIE's working interest boepd.

11. Debtors represents that "[t]he majority of these [historic intercompany] transfers are between MER and CIE, with MER and CIE covering cash shortfalls of the other Debtors from time to time. The Debtors account for and track each of these transfers in the ordinary course and prepare an intercompany reconciliation at the end of each month." Dkt. 57, ¶ 22. Based on the Giesler representations of where the income of the affiliates derives, Petitioning Creditors believe this sentence should have read "with CIE covering cash shortfalls of the other Debtors, including MER". Again, Debtors' accounting for MER's draining CIE of its income and tax credits will not protect CIE's creditors.

12. Petitioning Creditors believe the ten bankruptcies affiliated with CIE's involuntary bankruptcy were filed to poach the income and tax credits of CIE for the benefit of MER and its affiliates. A careful analysis of the perfections of security interests in CIE assets may lead this Court and even Petitioning Creditors to conclude that a broad sharing of CIE's assets among the affiliates is appropriate. But the information necessary to draw such conclusions has not yet been provided by the Debtors and allowing MER to siphon CIE income and credits is fundamentally unfair to CIE's creditors. No more intercompany transfers should be permitted until DIP-like protections in favor of CIE are in place.

13. Specifically, Petitioning Creditors request that an order be entered that no CIE income or tax credits be used to pay, employees of MER or any affiliate of MER other that CIE (Dkt 56), the executive compensation of the four MER executives (Dkt 71), the utility expenses of MER

4

or any affiliate of MER other than CIE (Dkt 59), or any other expense of MER or any affiliate of MER other than CIE.  Petitioning Creditors also request that an order be entered directing Debtors to report and account for all intercompany transfers made after CIE filed its Consent to Entry for Order of Relief on October 1, 2015.

Dated:  October 5, 2015                                     Respectfully submitted,

**ERIK LEROY, P.C.**

/s/ Erik LeRoy
Erik LeRoy
Alaska State Bar No. 8310130
500 L St., Suite 302
Anchorage Alaska 99501
Telephone:  (907) 277-2006
E-mail:  erik@alaskanbankruptcy.com

*Counsel for Baker Hughes Oilfield Operations, Inc., Baker Petrolite, LLC, Schlumberger Technology Corporation and M-I, LLC d/b/a MI-SWACO*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2015, a copy of the foregoing *Response to Debtors' Emergency Motion For Order Authorizing Continued Use Of Bank Accounts, Waiving Section 345 Requirements And Authorizing Continuation Of Intercompany Transactions* was electronically filed and served via the Court's CM/ECF System upon all parties registered to receive notice.

/s/ Erik LeRoy
Erik LeRoy

5