IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

----------------------------------------------------------X
                                   :

*In re*                           :      Chapter 11

Cook Inlet Energy, LLC, et al[1]     :

                 Debtors.     :      Case No. 15-00236-(GS)

                                  :      Joint Administration Requested
                                  :

                                  :
----------------------------------------------------------X

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO
UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 ON A CONSENSUAL
BASIS; (II) GRANTING ADEQUATE PROTECTION PURSUANT TO
11 U.S.C. §§ 105, 361, 362, 363 AND 507; AND (III) GRANTING RELATED RELIEF**

        Upon (i) the motion (the "Motion"), dated October 2, 2015, of Miller Energy Resources,

Inc. (the "Borrower") and its affiliated debtors, each as debtor and debtor-in-possession

(collectively, the "Debtors"), for entry of an interim cash collateral and DIP financing order (this

"Order"), (ii) the record of the initial hearing (the "Interim Hearing") on the Motion on October

6, 2015 and October 9, 2015 (including the Debtors' testimony and their documents introduced

into evidence), the objections with respect thereto, and the subsequent proceedings, (iii) the

consent of Apollo Investment Corporation, as administrative agent and/or collateral agent (the

"Agent") and the Second Lien Lenders[2] (together with the Agent, the "Pre-Petition Secured

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are Cook Inlet Energy, LLC, an Alaska limited liability company (6643); Miller Energy Resources, Inc., a
Tennessee corporation (8629); Miller Drilling, TN LLC, a Tennessee limited liability company (8891); Miller
Energy Services, LLC, a Delaware limited liability company (8670); Miller Energy GP, LLC, a Delaware limited
liability company (0999); Miller Rig & Equipment, LLC, a Delaware limited liability company (8727); East
Tennessee Consultants, Inc., a Tennessee corporation (3108); East Tennessee Consultants II, L.L.C., a Tennessee
limited liability company (0107); Anchor Point Energy, LLC, an Alaskan limited liability company (7946); Savant
Alaska, LLC, a Colorado limited liability company (0579); and Nutaaq Operating LLC, an Alaska limited liability
company (2908).

[2]      The Second Lien Lenders are Apollo Investment Corporation; Highbridge Principal Strategies – Specialty
Loan Fund III, L.P.; Highbridge Principal Strategies – Specialty Loan VG Fund, L.P.; Highbridge Principal
Strategies – NDT Senior Loan Fund, L.P.; Highbridge Principal Loan Strategies – Specialty Loan Institutional Fund

Parties") (capitalized terms not defined herein have the meanings in the Motion) to this revised Order that, on an interim basis, authorizes use of the Cash Collateral but defers the incurrence of the DIP Facility, and (iv) upon the resolution of all objections to this form of interim Order (subject to the preservations of rights with respect to the Final Order (as defined below) pursuant to paragraphs 1, 14(b) and 24 below):

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.     *Involuntary Petition*. On August 6, 2015, Baker Hughes Oilfield Operations, Inc., M-I LLC, Schlumberger Technology Corporation and Baker Petroline, LLC, filed an involuntary Chapter 11 petition (the "Involuntary Petition") in this Court (ECF 1) against Cook Inlet Energy, LLC ("CIE"), as joined in on September 30, 2015 (ECF 47) by National Oilwell Vacro, L.P. (collectively, the "Involuntary Petitioners").

B.     *Voluntary Petitions*. On October 1, 2015 (the "Petition Date"), CIE filed a consent for order for relief to convert the CIE Case to a voluntary chapter 11 filing and Miller filed voluntary chapter 11 petitions. The Debtors have continued to operate their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the chapter 11 cases of the Debtors (the "Cases"). The Cases are being jointly administered for procedural purposes only under Case No. 15-00236. The Office of the United States Trustee (the "U.S. Trustee") had not yet appointed official committee of unsecured creditors in the Cases (when appointed, the "Committee").

---

III, L.P.; Highbridge Specialty Loan Institutional Holdings Limited; Highbridge Aiguilles Rouges Sector A Investment Fund, L.P.; Highbridge Specialty Loan Section A Investment Fund, L.P.; Lincoln Investment Solutions, Inc.; and Highbridge Specialty Loan Holdings II, L.P.

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. See Fed. R. Bankr. P. 7052.

C.       *Pre-Petition Secured Parties' Consent*. The Pre-Petition Secured Parties have agreed to permit the Debtors' use of the Cash Collateral on the revised terms set forth in this Order.

D.       *Jurisdiction*. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409 and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 361, 362, 363 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and the applicable Local Rules.

E.       *Notice*. The Debtors represent that they have provided notice of the Motion and the Interim Hearing via facsimile, hand delivery, electronic transmission or overnight mail to (a) the Office of the United States Trustee for the District of Alaska, (b) all known or alleged secured creditors; (c) the 30 largest unsecured creditors of the Debtors on a consolidated basis; (d) the Agent; (e) the United States Attorney's Office for the District of Alaska, (f) the Securities and Exchange Commission, and (g) the Internal Revenue Service. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes appropriate, due and sufficient notice thereof and complies with Bankruptcy Rules 2002 and 4001 and the Local Rules, and no further notice of any of the foregoing is necessary or required.

F.       *Original Motion*. Before the Motion was deemed modified as described herein and the relief requested was limited to the use of cash collateral, the form of Order was in a typical form that included a number of provisions intended to apply in the Final Order (as defined below) (subject to the rights of all parties-in-interest to object thereto). The Debtors have

3

informed this Court that, with the agreement of the Pre-Petition Secured Creditors, this form of interim Order has been substantially pared down such that, unless explicitly stated otherwise, the "final order" provisions have been omitted. The Debtors have further informed the Court that they have agreed with the Pre-Petition Secured Creditors that such provisions will be included in the proposed final cash collateral, including provisions relating to the non-application of the doctrine of "marshaling," the absence of "equities of the case" under Bankruptcy Code § 552(b), a waiver of the Debtors' right to seek to surcharge the Pre-Petition Collateral or the Cash Collateral pursuant to Bankruptcy Code § 506(c), preservation of the Pre-Petition Secured Creditors' right to "credit bid" at any sale of the Pre-Petition Collateral under Bankruptcy Code §§ 363 or 1129(b)(2)(A)(ii)-(iii), and other provisions. This paragraph F is being included in this Order at the request of the Debtors and the Pre-Petition Secured Creditors in order to ensure substantial advance notice of their intentions with respect to the Final Order, but this Court expresses no view and takes no position as to the appropriateness of any such provisions. Further, as provided in paragraph 24 below, the rights of all parties-in-interest to object to the inclusion of any such provisions or any other terms of the Final Order except as specifically stated herein are fully preserved without prejudice.

G.    *Debtors' Stipulations*. Subject to the full preservation of rights of other parties as provided in paragraph 24 below, but which rights are subject to the limitations thereon contained in paragraphs 16 with respect to the Challenge Period (as defined therein) and 19 below, and for the duration of these Cases (including beyond the duration of this interim Order), the Debtors (after review by their counsel as to each of the matters referred to below) have admitted, stipulated and agreed on their own behalf only that:

(i)        Pursuant to the Second Lien Credit Agreement, the Apollo Guarantee Agreement and all related transactional documents (together, the "Pre-Petition Indebtedness Documents"), the Debtors borrowed $175,000,000 in original principal amount from the Pre-Petition Secured Parties.

(ii)       As of the filing of the involuntary and voluntary chapter 11 petitions in these Cases, the aggregate amount of the obligations under the Pre-Petition Indebtedness Documents (the "Pre-Petition Facility Indebtedness") consists of: (a) approximately $183.8 million in outstanding principal (including capitalized PIK interest) and accrued and unpaid interest; (b) approximately $5.9 million make-whole payment due under Section 3.05 of the Second Lien Credit Facility; and (c) an unliquidated amount of fees, reasonable costs and expenses incurred or estimated to be incurred by the Pre-Petition Secured Parties, through the time of the entry of this Order.

(iii)      The obligations under the Pre-Petition Indebtedness Documents (the "Pre-Petition Facility Indebtedness") constitute the legal, valid and binding obligations of the Debtors, enforceable against them in accordance with the terms of the Pre-Petition Indebtedness Documents (subject to the automatic stay).

(iv)      No portion of the Second Lien Facility, the Pre-Petition Facility Indebtedness or any payment on account thereof is subject to any Claims or Defenses (as defined below); and the Debtors do not have, hereby forever release, and are forever barred from asserting any Claims or Defenses against any of the Pre-Petition Secured Parties (solely in such capacity).

(v)       The liens and security interests granted for the benefit of the Pre-Petition Secured Parties in the Collateral (as defined in the Pre-Petition Indebtedness

HOU:3599781.1

Documents) and the pre-petition and post-petition proceeds thereof, including the Cash Collateral (together, the "Pre-Petition Collateral"), constitute legal, valid, binding, enforceable (subject to the automatic stay) and perfected first priority liens on and security interests in the Pre-Petition Collateral, including Cash Collateral.

      H.    *Findings Regarding the Use of Interim Cash Collateral.*

      (i)    Good cause has been shown for the entry of this Order, including immediate and irreparable harm the estate will suffer if relief is not immediately granted.

      (ii)    The Debtors require the use of Cash Collateral prior to the final hearing on the Motion in order to, among other things, permit the orderly continuation of the operation of their businesses, maintain business relationships with managers, vendors and suppliers, make capital expenditures, satisfy other working capital and operational needs, and fund the administration and prosecution of the Cases (such Cash Collateral, the "Interim Cash Collateral"). The access of the Debtors to sufficient working capital and liquidity through the use of Interim Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors' estates and to a successful reorganization of the Debtors.

      (iii)    The Pre-Petition Secured Parties are willing to consent to the use of their Cash Collateral as Interim Cash Collateral subject to the provisions of this Order but have stated that they are not willing to consent to such use on terms materially worse than set forth in this Order. The Pre-Petition Secured Parties have acted in good faith in consenting to the Debtors' use of their Cash Collateral pursuant to the terms of this Order, and their reliance on the assurances referred to above is in good faith.

HOU:3599781.1

(iv)     The use of Interim Cash Collateral as authorized hereunder has been negotiated in good faith and at arm's length among the Debtors and the Pre-Petition Secured Parties, and the use of Interim Cash Collateral is fair and reasonable under the circumstances.

(v)     The Debtors have requested entry of this Order pursuant to Bankruptcy Rule 4001(b)(1). The authorization granted herein on an interim basis to use Interim Cash Collateral is necessary to preserve the going concern value of the Debtors and their estates. Absent granting the relief set forth in this Order, the Debtors' estates will be immediately and irreparably harmed. The use of Interim Cash Collateral in accordance with this Order is therefore in the best interests of the Debtors and their estates, creditors and stakeholders.

**NOW, THEREFORE**, **IT IS HEREBY ORDERED**:

1.     *PRESERVATION OF RIGHTS.* UNLESS OTHERWISE EXPLICITLY STATED, EACH AND EVERY ONE OF THE FOLLOWING DECRETAL PARAGRAPHS ARE QUALIFIED IN FULL BY THE PRESERVATION OF RIGHTS SET FORTH IN PARAGRAPH 24 BELOW AND SUCH PRESERVATION OF RIGHTS IS FULLY INCORPORATED BY REFERENCE INTO EACH OF THE FOLLOWING DECRETAL PARAGRAPHS.

2.     *Approval of Motion.* The Motion, as deemed revised to exclude the DIP Facility, is granted on an interim basis to the extent of and in accordance with the terms of this revised Order. The remaining provisions of this Order are and shall remain binding and enforceable with respect to all Interim Cash Collateral only, including beyond the duration of this interim Order (and not otherwise unless explicitly stated). All objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights

7

included therein, are hereby preserved until the final hearing with respect to all Cash Collateral other than the Interim Cash Collateral.

3.      *Use of Interim Cash Collateral: In General.* The Debtors are hereby authorized, subject to the terms and conditions of this Order, to use all Interim Cash Collateral to fund payment of all items set forth in the operating budget for the Debtors agreed upon by the Debtors and the Pre-Petition Secured Parties (in the form circulated by Debtors' counsel to all other relevant counsel on October 8 at 10:41 a.m. Alaska time, the "Approved Budget") for the following: (a) payment or reimbursement on a monthly basis of the Professional Fees (including legal and financial adviser (if any) fees and expenses) for any of the Pre-Petition Secured Parties as set forth in the Pre-Petition Indebtedness Documents, including any unpaid amounts incurred prior to the Petition Date (the "Adequate Protection Payments"); (b) working capital and general corporate purposes approved in the Approved Budget; and (c) Court-approved administrative expenses for estate professionals; and such other expenses to which all the Pre-Petition Secured Parties may consent in writing in their sole direction. The concepts of "Carry Forward Amounts" and "Permitted Variances", as such terms are defined in the DIP Credit Agreement filed in connection with the Motion, are expressly incorporated herein and shall apply to the Approved Budget even though the DIP Credit Agreement itself is not currently effective.

4.      *Use of Interim Cash Collateral: Intercompany Transfers*. The Debtors' CEO testified that, in the Debtors' view, the Debtors are operated as a single business and that intercompany transfers should be permitted on an ordinary course basis in the same way they were made in the ordinary course of business. However, for the duration of this interim Order only, and without prejudice of the Debtors to seek such intercompany use in connection with the Final Order or further order of the Court, (i) the Debtors shall not make any intercompany

HOU:3599781.1

transfers (but this shall not prevent them from accruing same on an accounting basis), (ii) each Approved Budget shall allocate revenues and expenses separately as to each Debtor, and (iii) the right of any party-in-interest to object to the requested permission to make intercompany transfers in connection with the Final Order and to the allocation of revenues and expenses as among the Debtors in the Approved Budget are fully preserved (as are the rights of the Debtors and the Pre-Petition Secured Parties to oppose any such allocation objection).

5.    *Cash Collateral Accounts*. All cash of the Debtors shall be deposited by the Debtors in one or more deposit accounts (including, for avoidance of doubt, any lockboxes or similar accounts, any related securities accounts and any accounts holding Cash Equivalents (as defined in the Second Lien Credit Facility), and with respect to which the Pre-Petition Secured Parties shall have an Adequate Protection Lien as security for the payment and performance of the Pre-Petition Facility Indebtedness by virtue of, and having the priority set forth in, this Order (the "Cash Collateral Accounts"). So long as no Cash Collateral Termination Event shall have occurred and be continuing, amounts held in the Cash Collateral Accounts shall be available to the Debtors for use in a manner or for a purpose not prohibited by this Order. During the existence of a Cash Collateral Termination Event, the Debtors shall utilize the funds contained in the Cash Collateral Accounts only as set forth herein or as otherwise permitted by the Court.

6.    *Termination*. The right to use Interim Cash Collateral shall terminate automatically upon the earlier to occur of (x) 5 business days' written notice provided by the Agent, to the U.S. Trustee, the Debtors, the Committee through their respective counsel, or provided by the Debtors to the Pre-Petition Secured Parties, through their respective counsel, of the occurrence and continuance of any Cash Collateral Termination Event (as defined below), and (y) the date that is 45 calendar days after the Petition Date, unless the continued use of Cash

Collateral deemed necessary for the successful operations and reorganization of the Debtors has been approved by the Final Order. For the avoidance of doubt, (i) the use of Interim Cash Collateral is protected under section 363(m) of the Bankruptcy Code as set forth in paragraph 12(c) below, and (ii) the Debtors shall be allowed to continue to use Interim Cash Collateral pursuant to the terms of this Order and the Approved Budget (but not otherwise) if they receive any additional payment in respect of any tax credit certificate, or right or interest therein, or any right to or interest in any payment from the fund established pursuant to Alaska Statute (AS) 43.55.028 ("Tax Credit Certificate Payment").

7.       *Cash Collateral Termination Event.* Each of the following shall separately constitute a "Cash Collateral Termination Event":

(a)       any Debtor fails timely and fully to perform its payment obligations under this Order, including any Adequate Protection Payment, as and when due;

(b)       noncompliance with any other covenant in this Order and such noncompliance could reasonably be expected to have a material adverse effect on the business, operations or financial condition of the Debtors or on the rights and protections granted to the Pre-Petition Secured Parties in this Order (collectively, a "Material Adverse Effect");

(c)       the termination of the exclusivity period for any Debtor;

(d)       any Debtor files a plan of reorganization that does not propose to indefeasibly repay the Pre-Petition Facility Indebtedness in full in cash as a condition to the confirmation of such plan, or if such plan is not consistent with the Plan Term Sheet, unless the Pre-Petition Secured Parties consent to such plan in their sole discretion;

(e)       without the prior written consent of the Pre-Petition Secured Parties, there is a filing of any motion by any Debtor requesting, or entry of an order granting, any new lien or

HOU:3599781.1

new superpriority claim which is senior or *pari passu* with the liens of the Pre-Petition Secured Parties under the Pre-Petition Loan Documents or this Order;

(f)      an order with respect to any of the Cases shall be entered appointing, or any Debtor shall file an application for an order with respect to any of the Cases seeking the appointment of, in either case without the prior written consent of the Pre-Petition Secured Parties (i) a trustee under Section 1104 of the Bankruptcy Code, or (ii) an examiner or any other Person with enlarged powers relating to the operation of the business (*i.e.*, powers beyond those set forth in Sections 1104(d) and 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code;

(g)      an order shall be entered dismissing the Debtors' Cases or converting the Debtors' Cases to a case under Chapter 7 of the Bankruptcy Code;

(h)      any Debtor or any Person with the support of any Debtor shall file any pleading, or any order is entered with respect to the Debtors' Cases, without the prior written consent of the Pre-Petition Secured Parties (i) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority equal or superior to the priority of the Agent and the Pre-Petition Secured Parties under the Pre-Petition Indebtedness Documents or this Order, other than the Carve-Out, (ii) to grant or permit the grant of a lien on any of the Cash Collateral or other Pre-Petition Collateral other than the Adequate Protection Liens, (iii) to permit any Debtor to use proceeds of Cash Collateral or any Pre-Petition Collateral other than in accordance with the terms of this Order, (iv) to invalidate or otherwise challenge any of the Adequate Protection Liens, or otherwise object to, or raise defenses to, the extent, amount, validity, perfection, priority or enforceability of any of the Pre-Petition Facility Indebtedness or the Adequate Protection Liens, (v) to surcharge under

11

Section 506(c) or 552 of the Bankruptcy Code any Cash Collateral or any Pre-Petition Collateral, or (vi) permit the use of Cash Collateral except as permitted by this Order;

(i)   without the prior written consent of the Pre-Petition Secured Parties, the bringing of a motion by any Debtor, or the entry of an order or ruling, in each case unless the Pre-Petition Secured Parties consent to such order or ruling (such as the provision of a post-petition financing facility by the Pre-Petition Secured Parties): (i) to obtain financing under Section 364(c) or (d) of the Bankruptcy Code that is senior or *pari passu* with the Pre-Petition Facility Indebtedness; (ii) to grant any lien affecting any Cash Collateral or other Pre-Petition Collateral without the prior written consent of the Pre-Petition Secured Parties; (iii) except as provided in this Order, to use Cash Collateral without the prior written consent of the Pre-Petition Secured Parties; or (iv) any other action or actions adverse to the Pre-Petition Secured Parties, or their rights and remedies hereunder or their interests in the Cash Collateral or any other Pre-Petition Collateral;

(j)   the Debtors withdraw the plan of reorganization that is consistent with the Plan Term Sheet with respect to any of the Debtors, resulting from a good faith determination by the board of directors of the Borrower that such withdrawal was required in order to fulfill their fiduciary duties;

(k)   there is entry of an order requiring the inclusion in the Carve-Out of any Professional Fees for any professionals for any official or ad hoc committee other than the Committee;

(l)   there is entry of an order without the prior consent of the Agent, amending, supplementing or otherwise modifying (each in the sole judgement of the Agent) this Order;

12

HOU:3599781.1

(m)      there is a reversal, vacation or stay of the effectiveness of either this Order;

(n)      the entry of an order granting relief from the automatic stay to allow a third party to proceed against assets of any Debtor with a value in excess of $250,000 (but this shall not apply to the rights of setoff of the State of Alaska as set forth in paragraph 14(b) below);

(o)      failure to timely furnish any reports, financial statements or other information as may be reasonably requested by the Pre-Petition Secured Parties, including all such reports, financial statements and other information identified in the DIP Credit Agreement filed in connection with the Motion, all of which is expressly incorporated herein even though the DIP Credit Agreement itself is not currently effective. The Debtors shall simultaneously provide the foregoing information with the Committee, except to the extent that the Debtors and the Pre-Petition Secured Parties agree in good faith that such information should not currently be shared with the Committee based on matters of the type described in section 107(b) of the Bankruptcy Code or based on legal or strategic matters that the Debtors and the Pre-Petition Secured Parties agree in good faith are inappropriate to share with the Committee under the doctrines of common interest, joint defense, privilege, or similar protections from disclosure. Nothing in this paragraph shall (i) limit the Committee's right to conduct discovery; (ii) limit the scope of discoverable matters; or (iii) expand the scope of any privileges with respect to disclosure of information. Parties reserve all rights regarding the foregoing (i) - (iii);

(p)      Failure of any Debtor to:

(i)      operate its Oil and Gas Properties and other material Properties or cause such Oil and Gas Properties and other material Properties to be operated in a careful and

13

efficient manner in accordance with the practices of the industry and in compliance with all governmental requirements, except where the failure to comply could not reasonably be expected to have a Material Adverse Effect. The concepts of "Oil and Gas Properties" and "Property", as such terms are defined in the DIP Credit Agreement filed in connection with the Motion, are expressly incorporated herein even though the DIP Credit Agreement itself is not currently effective;

(ii)    except as otherwise excused by the Court or under the Bankruptcy Code, promptly pay and discharge, or make reasonable and customary efforts to cause to be paid and discharged, all delay rentals, royalties, expenses and obligations accruing under the leases or other agreements affecting or pertaining to its material Oil and Gas Properties and will do all other things necessary to keep unimpaired their rights with respect thereto and prevent any forfeiture thereof or default thereunder; or

(iii)    except as otherwise excused by the Court or under the Bankruptcy Code, promptly perform or make reasonable and customary efforts to cause to be performed, in accordance with industry standards, the obligations required by each and all of the assignments, deeds, leases, sub-leases, contracts and agreements affecting its interests in its material Oil and Gas Properties;

(q)    failure of any Debtor to maintain insurance in such amounts and against such risks as are customarily maintained by companies engaged in the same or similar businesses operating in the same or similar locations;

(r)    <u>Compliance with Laws</u>. failure of any Debtor to comply with all laws, rules, regulations and orders of any governmental authority applicable to it or its Property, except

14

where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect;

(s)     Environmental Matters. failure by any Debtor to comply, and to cause its Properties and operations to comply, with all applicable Environmental Laws (as such term is defined in the DIP Credit Agreement filed in connection with the Motion, even though the DIP Credit Agreement itself is not currently effective), the breach of which could be reasonably expected to have a Material Adverse Effect; and

(t)     Budget and Permitted Variance. as of the Monday two weeks after the entry of this Order and each subsequent Monday two weeks after the first date (each a "Test Date"), the aggregate expense disbursements actually made by the Debtors during the immediately preceding two-week period shall not exceed the aggregate budgeted expense disbursements set forth in the Approved Budget in effect for the applicable test period by more than the Permitted Variance;

8.     *Carve-Out: In General*. For purposes of this Order, the "Carve-Out" shall mean the sum of:

(a)     any fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930 of title 28 of the United States Code;

(b)     between the Petition Date and the occurrence of a Cash Collateral Termination Event, including amounts accrued but not yet paid, all attorneys' fees and the fees of any other professionals ("Professional Fees") of the Debtors and Committee (if any) to the extent (and only to the extent) (i) set forth in the Approved Budget (including permitted variances and carry-overs) and (ii) allowed by or approved by the Court (including on an interim basis);

HOU:3599781.1

(c)      following the occurrence of a Cash Collateral Termination Event, an amount equal to (i) an aggregate amount incurred upon and after the occurrence of the Cash Collateral Termination Event not to exceed $500,000 plus, (ii) in the case of the Debtors' professionals, any unused prepetition retainer held by such professionals as of the date of this Order, for allowed Professional Fees, and reimbursement for disbursements of professionals retained by the Borrower and/or any official committee; and

(d)      all other unpaid allowed administrative expenses incurred consistent with (and not in excess of line item amounts established in) the Approved Budget through date of the occurrence of a Cash Collateral Termination Event.

9.      *Carve-Out: Special Provisions.*

(a)      The Involuntary Petitioners have reserved the right to file an application for payment of administrative expenses in connection with their filing of the Involuntary Petition and a substantial contribution claim under section 503(b) of the Bankruptcy Code through the date of appointment of a Committee. The rights of the Debtors, the Pre-Petition Secured Creditors to object to all or any of such application, including the timing and conditions with respect to the payment of any allowed amounts, are preserved without prejudice. Should any application amounts be allowed and ordered to be paid prior to the effective date of a plan of reorganization, (i) the Debtors and the Pre-Petition Secured Creditors have agreed that allowed amounts will automatically be deemed to be included in the Approved Budget then in effect (if any), and (ii) the Debtors' Professionals have agreed that, should any such amounts be allowed and approved for payment after the occurrence of a Collateral Termination Event, such amounts will be paid out of the post-termination Carve-Out for the Debtors' Professionals set forth in sub-clause (i) of paragraph 8(c) above.

16

(b)     The Carve-Out shall not include, apply to, or be available for any fees or expenses incurred by any party, including any Debtor, any committee (including the Committee) or any professional, in connection with:

(i)     the investigation, initiation or prosecution of any claims against any of the Pre-Petition Secured Parties in connection with the Pre-Petition Indebtedness Documents and/or the Pre-Petition Collateral; provided, however, that the Committee shall be entitled to incur up to $50,000 in fees and expenses to investigate (but not initiate or prosecute) the foregoing matters with respect to the Second Lien Credit Facility only;

(ii)     a request to use cash collateral without the prior consent of the Pre-Petition Secured Parties;

(iii)     a request, without the prior consent of the Pre-Petition Secured Parties, for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code; or

(iv)     any act that has the effect of adversely modifying or compromising the rights and remedies of the Pre-Petition Secured Parties as set forth herein, or that results in the occurrence of a Cash Collateral Termination Event.

10.     *Adequate Protection*. The Pre-Petition Secured Parties are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Pre-Petition Collateral, including the Cash Collateral, solely to the extent of any decrease in the value of the Pre-Petition Secured Parties' interests in the Pre-Petition Collateral. The provisions of this paragraph 10 shall apply beyond the duration of this interim Order to the extent (and only to the extent) of the Debtors' actual use of, and the decrease in value of the Pre-Petition Secured Parties' interests in, the Pre-Petition Collateral and the Interim Cash Collateral during the

17

pendency of this interim Order. The Final Order alone shall govern adequate protection with respect to all other Pre-Petition Collateral and Cash Collateral. As such adequate protection solely to the extent of such decrease in value, the Pre-Petition Secured Parties are hereby granted the following adequate protection (collectively, the "Adequate Protection Obligations"):

(a)    Adequate Protection Liens. Replacement liens upon all of the Pre-Petition Collateral, subject and subordinate only to the Carve-Out (the "Adequate Protection Liens").

(b)    Adequate Protection Claims. (i) Allowed administrative claims pursuant to section 503(b) of the Bankruptcy Code (the "Administrative Expense Claim"); and (ii) under the circumstances and to the maximum extent provided for under section 507(b) of the Bankruptcy Code, a "superpriority" administrative claims pursuant to Bankruptcy Code § 507(b) ("Superpriority Administrative Expense Claim", collectively with the Administrative Expense Claim, the "Adequate Protection Claims") provided, however, that the Adequate Protection Claims shall be subordinate and subject to the Carve-Out.

(c)    Ordinary Course Use of Existing Collateral. The Pre-Petition Collateral will only be used consistently with historical practices and in compliance with all maintenance, insurance and similar requirements under the Second Lien Credit Facility, including naming the Agent as an additional insured and loss payee.

(d)    Fees and Expenses. Current cash payments of all fees and expenses payable to the Pre-Petition Secured Parties under the Pre-Petition Indebtedness Documents, including, but not limited to, the right to apply any prepetition payments not yet applied and the fees and disbursements of counsel and financial advisors promptly upon receipt of monthly invoices therefor (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee applications, including any unpaid amounts

18

incurred prior to the Petition Date. Any payments of the foregoing made during the "gap period" shall not be subject to avoidance under sections 544, 547, 548, 549 or 550 of the Bankruptcy Code.

11.     *Potential Assertions.* Nothing in paragraph 10(a) above is intended to prevent any party-in-interest from asserting that, due to any Court determination that the Pre-Petition Secured Parties' interests in the Pre-Petition Collateral is different than what the Debtors have stipulated to in paragraph G above, all or some of the Adequate Protection Obligations are inappropriate, or to prevent the Debtors or the Pre-Petition Secured Parties' from opposing any such assertion.

12.     *Perfection of the Adequate Protection Liens.*

The Adequate Protection Liens shall be treated as fully perfected by virtue of the entry of this Order without the need for any filings or recordations. Without limiting the foregoing, in the discretion of the Pre-Pepetition Secured Creditors, a certified copy of the Order may be filed with or recorded in filing or recording offices and all filing offices are hereby authorized and directed to accept such certified copy of the Order for filing and recording.

13.     *Preservation of Rights Granted Under the Order.*

(a)     Except as expressly provided herein, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Pre-Petition Secured Parties shall be granted or allowed while the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinate to or made *pari passu* with any other lien or security interest, whether under section 364 of the Bankruptcy Code or otherwise.

(b)     Until all of the Adequate Protection Obligations shall have been paid and satisfied in full, no Debtor shall file a motion seeking, or consent to the filing of or join in a motion seeking, (i) any reversal, modification, amendment, stay or vacatur of this Order, (ii) an order dismissing any of the Cases under sections 105, 305 or 1112 of the Bankruptcy Code or otherwise; (iii) an order converting any of the Cases to cases under chapter 7 of the Bankruptcy Code; (iv) an order appointing a chapter 11 trustee in any of the Cases; or (v) an order appointing an examiner with enlarged powers beyond those set forth in sections 1104(d) and 1106(a)(3) and (4) of the Bankruptcy Code in any of the Cases. If an order dismissing any of the Cases under sections 105, 305 or 1112 of the Bankruptcy Code or otherwise is entered, such order shall provide that (x) the Adequate Protection Claims and other administrative claims granted under this Order, the Adequate Protection Liens granted to the Pre-Petition Secured Parties pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all of the Adequate Protection Obligations shall have been paid and satisfied in full; and (y) the Court shall retain jurisdiction notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     Based on the findings of good faith set forth in paragraph H above, if any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, the Pre-Petition Secured Parties shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. The holding in *In re TMT Procurement Corp. (TMT Procurement Corp. v. Vantage Drilling Co.*, 764 F.3d 512 (5th Cir. 2014) (limiting the applicability of section 363(m)) is inapplicable to these cases because no property other than

property of the estate is being utilized to provide adequate protection to the Pre-Petition Secured Parties.

(d)     Except as expressly provided in this Order, until all of the Adequate Protection Obligations shall have been paid and satisfied in full, the Adequate Protection Liens, the Adequate Protection Obligations and all other rights and remedies of the Pre-Petition Secured Parties granted by the provisions of this Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases, or terminating the joint administration of these Cases, (ii) the entry of an order approving the sale of any Pre-Petition Collateral pursuant to section 363(b) of the Bankruptcy Code or (iii) the entry of an order confirming a plan of reorganization in any of the Cases.

14.     *Tax Credit Certificate Payments.*

(a)     The Debtors shall continue to deposit all Tax Credit Certificate Payments into the First National Bank of Alaska account as to which the Debtors, the Agent and the First National Bank of Alaska have heretofore entered into the Deposit Account Control Agreement (the "DACA"), and the Debtors shall ensure that the DACA remains fully in effect with respect to such deposits and such account.

(b)     Notwithstanding anything in this Order to the contrary, to the extent that the State of Alaska has legal rights to set off payments due the State of Alaska against Tax Credit Certificate Payments due from the State of Alaska to any of the Debtors, all such rights are expressly preserved and shall not be limited or adversely affected by any other provision in this Order.

21

15.     *Cooperation with the Committee*. The Debtors shall timely comply with their duties under section 1106(a) of the Bankruptcy Code, 28 U.S.C. § 959, Bankruptcy Rule 2015 and other applicable law and rules, including cooperating and consulting with the Committee in order to enable the Committee to fulfill its powers and duties under section 1103(c)(1) of the Bankruptcy Code.

16.     *Effect of Stipulations on Third Parties*.

(a)     The stipulations and admissions contained in this Order, including, without limitation, in paragraph G above, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 11 trustee appointed or elected for any of the Debtors but expressly excluding any chapter 7 trustee) in all circumstances.

(b)     The stipulations and admissions contained in this Order, including, without limitation, in paragraph G above, shall be binding upon the Debtors' estates and all parties in interest, including, without limitation, any committee (including the Committee) or any other person or entity acting on behalf of the Debtors, unless and solely to the extent (and expressly subject to sub-paragraphs (c) and (d) below) that (i) the Committee or any other party in interest with requisite standing (with the rights of the Debtors and the Pre-Petition Creditors to object to any request for standing) to commence an adversary proceeding or contested matter (an "Authorized Challenge") (x) challenging the validity, enforceability, priority or extent of the outstanding Pre-Petition Facility Indebtedness, the Pre-Petition Indebtedness Documents or the Pre-Petition Secured Parties' liens on the Pre-Petition Collateral or (y) otherwise asserting or prosecuting any action for avoidance under sections 544, 547, 548, 549 or 550 of the Bankruptcy Code, subordination, recharacterization or any other any claims, counterclaims or causes of action, objections, contests or defenses (collectively and with reference to each of the items

described in the foregoing clause (x), "Claims and Defenses") against the Pre-Petition Secured Parties or any of their affiliates, representatives, attorneys or advisors.

(c)   In the case of the Committee, (i) any request for standing must be filed no later than the date that is 60 days after the date that notice of the formation of a Committee appointed under section 1102 of the Bankruptcy Code in the Cases is filed on the docket of such Cases and (ii) any such Challenge must be commenced no later than 7 days after the request for standing has been granted (if it has).

(d)   In the case of any other party-in-interest, (i) any request for standing must be filed no later than the date that is 90 days after the entry of this Order and (ii) any such Challenge must be commenced no later than 7 days after the request for standing has been granted (if it has) (the time periods in the foregoing paragraph 16(c) and in this paragraph 16(d) are together referred to as the "Challenge Periods")

17.   *Limitation on Use of Collateral*. Nothing in this Order is intended to restrict the ability of the Committee or any other party-in-interest to incur fees and expenses as they may choose but, notwithstanding anything herein or in any other order by this Court to the contrary, for the duration of this Interim Order only, none of the Cash Collateral or the Carve-Out may be used to pay any such allowed fees and expenses incurred for the following purposes: (a) the commencement or prosecution of, or joinder in (but excluding any investigation into) any Claims or Defenses; (b) challenging or objecting to payment of any amount due under the Pre-Petition Indebtedness Documents; (c) preventing, hindering or delaying the assertion or enforcement by the Pre-Petition Secured Parties of any of their respective liens, claims, rights or security interests or realization upon the Pre-Petition Collateral; (d) seeking to adversely modify any of the rights granted to the Pre-Petition Secured Parties hereunder or under the Pre-Petition

Indebtedness Documents, in each case without such parties' prior written consent; (e) the commencement or prosecution of any action or proceeding of any claims, causes or action, or defenses against any of the Pre-Petition Secured Parties' respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors; (f) using or seeking to use any insurance proceeds, or incurring any indebtedness not permitted hereunder without the Pre-Petition Secured Parties' express prior written consent; or (g) any other purpose not included in, or in excess of the applicable amount on the relevant line item with respect to such purpose as set forth in, the Approved Budget.

18.      *Insurance*. The Pre-Petition Secured Parties shall be deemed to be the loss payee or additional insured under the Debtors' insurance policies, shall act in such capacities and, subject to the terms of the Pre-Petition Indebtedness Documents, distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the payment of the Adequate Protection Obligations and, *second*, to the payment of the Pre-Petition Facility Indebtedness.

19.      *Proofs of Claim*. The Debtors' stipulations and admissions contained in this Order shall be deemed to constitute a timely proof of claim for the Pre-Petition Secured Parties for all purposes under the Bankruptcy Code and no other filings shall be required.

20.      *Modifications of the Approved Budget*. Without further Order of the Court, the Debtors and the Pre-Petition Secured Parties are hereby authorized to implement, in accordance with the terms hereof, any modifications to the Approved Budget.

21.      *Binding Effect; Not Control Persons*. The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases. In exercising any rights or remedies as and when permitted pursuant to this Order, the Pre-Petition Secured Parties

HOU:3599781.1

shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

22.     *Effectiveness*. This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

23.     *Retention of Jurisdiction*. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

24.     *PRESERVATION OF RIGHTS OF PARTIES-IN-INTEREST*. ALL RIGHTS, PROTECTIONS, LIMITATIONS, STIPULATIONS, RELEASES AND OTHER PROVISIONS IN THIS ORDER (OTHER THAN THE DEBTORS' STIPULATIONS AS TO THE DEBTORS ONLY AS SET FORTH IN PARAGRAPH G ABOVE) ARE AND SHALL REMAIN BINDING ONLY AS TO THE INTERIM CASH COLLATERAL AND, ONLY TO THE EXTENT SET FORTH HEREIN, THE PRE-PETITION COLLATERAL, AND SHALL NOT ADVERSELY AFFECT (I) THE RIGHTS OF ANY PARTY-IN-INTEREST TO OBJECT TO THE INCLUSION OF SUCH PROVISIONS IN ANY FINAL ORDER OR (II) THE RIGHTS OF THE PRE-PETITION SECURED PARTIES NOT TO CONSENT TO THE CONTINUED USE OF THE PRE-PETITION COLLATERAL AND THE CASH COLLATERAL IF THE

HOU:3599781.1

FINAL ORDER IS NOT IN FORM AND SUBSTANCE SATISFACTORY TO THEM. WITHOUT LIMITING THE FOREGOING, THE COURT RECOGNIZES THAT THE COMMITTEE HAS NOT BEEN FORMED YET AND, THEREFORE, HAS NOT HAD ANY OPPORTUNITY TO PROVIDE INPUT ON OR OBJECT TO THIS INTERIM ORDER.

25. *Final Hearing*. A final hearing on the Motion is set for **November 10, 2015, at 9:00 a.m. (Alaska Time)** in the United States Bankruptcy Court for the District of Alaska.

Dated: October 9, 2015
  Anchorage, Alaska            /s/   Gary Spraker          
                                     GARY SPRAKER
                                       United States Bankruptcy Judge

Serve:

- Charles A Beckham
- Michelle L. Boutin
- Thomas A. Buford
- David H. Bundy
- Kristen Campana
- Christopher L Castillo
- Cabot C. Christianson
- Kari B. Coniglio
- Timothy A. Davidson
- Wayne G. Dawson
- Carl Dore
- Dennis G. Fenerty
- Evan D. Flaschen
- David M. Freeman
- Ashley Gargour
- Thomas H. Grace
- Curt Roy Hineline
- Michael Jungreis
- Jonathan W Katchen
- David L. Lawton
- Erik LeRoy
- Joseph P. Rovira
- John J. Sparacino
- U.S. Trustee's Office
- Joshua W Wolfshohl
- David A. Zdunkewicz

HOU:3599781.1