UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: | Case No. A15-00236-GS |
| COOK INLET ENERGY, LLC, et al.,[1] | Chapter 11 |
| Debtor(s). | Jointly Administered |

**MEMORANDUM ON DEBTORS' MOTION TO ENFORCE JOINT PLAN OF REORGANIZATION AND TO PROHIBIT THE SETOFF OF NON-MUTUAL OBLIGATIONS**

Debtor Miller Energy Resources, Inc. (MER) seeks to recover millions of dollars from the State of Alaska (State) for statutory tax credits resulting from its natural gas operations. The State has commenced an audit of 2010 and 2011 tax credit certificates issued to Cook Inlet Energy, LLC (CIE) that the State redeemed shortly after the order for relief was entered in CIE's involuntary bankruptcy case.[2] The State argues that it should be permitted to offset the amounts of any overpayment to CIE against MER's unpaid tax credits.[3] The Debtors challenge the State's right to any overpaid tax credits as well as its ability to offset any overpayment to CIE against MER's unpaid tax credits.

---

[1] The debtors in the jointly consolidated cases are Cook Inlet Energy, LLC, an Alaska limited liability company, Miller Energy Resources, Inc., a Tennessee corporation, Miller Drilling, TN LLC, a Tennessee limited liability company, Miller Energy Services, LLC, a Delaware limited liability company, Miller Energy GP, LLC, A Delaware limited liability company, Miller Rig & Equipment, LLC, a Delaware limited liability company, East Tennessee Consultants, Inc., a Tennessee corporation, East Tennessee Consultants II, L.L.C., a Tennessee limited liability company, Anchor Point Energy, LLC, an Alaskan limited liability company, Savant Alaska, LLC, a Colorado limited liability company, and Nutaaq Operating LLC, an Alaska limited liability company. For purposes of this memorandum, the court shall use "Debtors," to refer to all of the debtors collectively, though issues presented are primarily directed to Miller Energy Resources, Inc. and Cook Inlet Energy, LLC.

[2] ECF No. 1216.

[3] *Id.*

**Facts**

The State levies an annual tax on oil and gas produced in Alaska based on the net value of the oil and gas at the point of production, less certain lease expenditures, capital and operating expenditures, and other adjustments.[4] In order to encourage oil exploration and development in Alaska, however, the State has statutorily created a system of credits that may be applied against the State's oil production tax. Credits are based upon specified percentages of qualified exploration expenditures, capital expenditures, well lease expenditures, carried-forward annual losses, as well as other types of expenditures.[5] The State issues transferrable tax credit certificates to qualified taxpayers to offset their oil and gas production tax obligations. In order to enable producers who do not have a production tax liability in a given year to monetize those tax credit certificates, the State established a system under which the State essentially cashes out those certificates.[6] The State reserves the right to audit the tax credit certificates to ensure that it did not credit the producer more than it was entitled.[7] In the event that an audit reveals that a tax credit certificate was issued in an amount exceeding that which the taxpayer was actually entitled to receive, the overpayment by the State results in a dollar-for-dollar increase in the taxpayer's tax liability or may be offset against any outstanding tax credits.[8]

---

[4] AS 43.55 et seq.

[5] AS 43.55.023.

[6] AS 43.55.028.

[7] AS 43.55.023(g)("The issuance of a transferable tax credit certificate under (d) of this section or former (m) of this section does not limit the department's ability to later audit a tax credit claim to which the certificate relates or to adjust the claim if the department determines, as a result of the audit, that the applicant was not entitled to the amount of the credit for which the certificate was issued.")

[8] *Id.* The Debtors argue in their second supplemental reply brief that the State should not be permitted to offset against MER's outstanding tax credits $446,000 in potential fines levied by the Alaska

2

CIE is an oil and natural gas company operating in Alaska. Its creditors involuntarily placed it into chapter 11 on August 6, 2015. On October 1, 2015, CIE consented to the chapter 11 filing.[9] MER is the parent company of CIE. It also engages in oil and natural gas exploration and production in Alaska. On the day that CIE consented to its chapter 11 bankruptcy, MER and nine other affiliated entities voluntarily filed separate chapter 11 petitions in the District of Alaska. Several days later, the court entered an order approving joint administration of the related cases.[10]

In between CIE's order for relief and the order for joint administration, the State paid CIE $14,796,055 to redeem a tax credit certificate for the tax year ending December 31, 2014.[11] On October 6, 2015, in its Limited Objection to Debtor's Cash Collateral Motion, the State advised that there was a separate tax credit certificate in the amount of $3,364,038 issued to MER for the tax year ending December 31, 2014.[12] The State noted that "[t]he State is currently investigating to determine if there are offsets against payment of that amount," and requested that "any cash collateral order be amended to provide that it does not impair the State's right to set off payments due the State against payment made for any tax credit certificates."[13]

---

Oil and Gas Conservation Commission (Fine). *See* ECF No. 1460. This court has not been presented with any facts showing that the State intends to offset the Fine against MER's outstanding tax credits, and thus does not reach the Debtors' argument on that issue.

[9] The order for relief was entered on October 2, 2015. ECF No. 63.

[10] ECF No. 101.

[11] ECF No. 96. This is consistent with the facts provided by the parties. The court takes judicial notice of the matters on its docket. Fed. R. Evid. 201.

[12] ECF No. 96 at 2.

[13] *Id.*

3

The Debtors filed a joint plan of reorganization and subsequent amendments for all of the related debtor entities (Plan).[14] The Plan provided that upon confirmation the jointly administered entities would be substantively consolidated into a single entity for distribution and voting purposes only.[15] Nonetheless, the Plan further provided that the Debtors would "continue to exist after the Effective Date as separate Entities in accordance with the applicable law in the applicable jurisdiction in which they were formed under their respective certificates of incorporation or formation, as applicable, and bylaws or similar organizational documents, as applicable, in effect before the Effective Date except as their certificates of incorporation or formation and bylaws or similar organizational documents may be amended pursuant to this Plan."[16]

The Plan also provided at Section 13.09 that:

> EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD OR MAY HOLD CLAIMS OR CAUSES OF ACTION AGAINST OR EQUITY INTERESTS IN ANY OF THE DEBTORS ARE, AS OF THE EFFECTIVE DATE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST ANY OF THE DEBTORS AND THEIR ESTATES, THE REORGANIZED DEBTORS OR THEIR PROPERTY OR ASSETS, THE CREDITOR TRUST OR THE CREDITOR TRUST ASSETS (EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN AS AGAINST THE CREDITOR TRUST OR CREDITOR TRUST ASSETS) ON ACCOUNT OF SUCH CLAIMS, CAUSES OF ACTION OR EQUITY INTERESTS:

---

[14] ECF No. 194, as amended at ECF Nos. 304, 348, 364.

[15] ECF No. 364 at § 4.07. Section 4.07 further provided that "(I) no Distributions shall be made under the Plan on account of Intercompany Claims, and (ii) all guarantees by the Debtors of the obligations of any other Debtor, including the Miller Subsidiary Guarantees, shall be consolidated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be one obligation." *Id.*

[16] ECF No. 364 at § 4.06. *See also* Disclosure Statement at § IV, L, 6.

* * *

> (D) ASSERTING ANY SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTORS RELATING TO SUCH CLAIM, CAUSE OF ACTION OR EQUITY INTEREST;

The court conducted its confirmation hearing on the Plan on January 27, 2016.[17] Counsel for the State appeared at the confirmation hearing, but did not object to confirmation of the Plan. The court entered its order confirming the Plan on January 28, 2016.[18]

MER filed five applications to redeem tax credit certificates with the State for 2014 through the end of June 2016, for approximately $8.3 million.[19] One of those applications, in the amount of $5,927,804, was filed pre-petition (application 2015A, filed on 4/30/15 for work performed 1/1/15 to 3/31/15); the other four applications were filed post-petition (applications 2015B filed on 8/31/16 (4/1/15 to 12/31/15, $654,209); 2016A filed on 8/31/16 (1/1/16 to 6/30/16, $836,060); 2014(E) filed on 8/30/16 (2014, $343,167); and 2014(F) filed on 7/13/16 (also 2014, $548,754)).[20]

After confirmation of the Plan, the State began efforts to audit the 2010 and 2011 tax credits previously paid to CIE to ensure that the State did not overpay the valid amounts owed.[21] On October 28, 2016, the Debtors filed the Motion to Enforce Joint Plan of Reorganization and to Prohibit the Setoff of Non-Mutual Obligations (Motion) to preclude the State from auditing the pre-

---

[17] ECF No. 500.

[18] ECF No. 502.

[19] ECF No. 1216 at 6.

[20] *Id.*

[21] ECF No. 1216 at 5.

5

petition tax credit certificates issued to CIE.[22] The Debtors argued that the Plan precludes the State from seeking any overpayments that may exist as a result of the State's redemption of CIE's tax credit certificates, because any pre-petition obligations owed to the State were discharged in accordance with 11 U.S.C. § 1141.[23] For this reason, the Debtors seek an order barring the State from even auditing CIE's tax credit certificates.[24] The State denies that the Plan precludes it from either conducting the audit or offsetting any overpayments against MER's pending applications for redemption of its tax credit certificates.[25] The State further argues that it may offset CIE's liability for overpayments against MER's claims for unpaid tax credits based upon the Debtors' "consolidation" for distribution and voting purposes under the Plan.[26]

On June 7, 2017, this court held a hearing on the Motion. After hearing oral argument from the parties, this court narrowed the parties' disputes to two issues:

1. Whether, post-confirmation, the State may offset any overpayment to CIE as a defense to MER's request for redemption of its tax credit certificates, where the State did not file a proof of claim asserting the alleged offset in the Debtors' bankruptcy case; and

2. If setoff is permitted, does the State satisfy the requirements for setoff under 11 U.S.C. § 553?

---

[22] ECF No. 1099.

[23] *Id.* at 6.

[24] *Id.*

[25] ECF No. 1216.

[26] *Id.* at 9.

**Analysis**

The Bankruptcy Code specifically recognizes, and preserves, the right of setoff under § 553(a), which provides that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." Under § 553(a), "a creditor must establish two elements before a setoff may be asserted: timing and mutuality."[27]

As an initial matter, the Debtors contend that the State does not even have a claim to offset because it failed to file a proof of claim for overpayment of CIE's tax credits. They also argue that the State cannot establish either the timing or mutuality necessary for offset because the State seeks to reduce MER's pre-petition tax credits by CIE's potential post-petition liability for overpayment of its tax credits.

### 1.     The Confirmed Plan Does Not Preclude Defensive Offsets.

The parties focus a substantial amount of their attention on whether the confirmed plan and § 1141(d)(1) bar the State from setting off its potential overpayment claims. Section 553(a) specifically provides that the Bankruptcy Code does not affect a creditor's rights to offset mutual pre-petition debts. But, this right of offset often clashes with the discharge provisions found in

---

[27] *United States of America v. Carey (In re Wade Cook Fin. Corp.)*, 375 B.R. 580, 594 (B.A.P. 9th Cir. 2007).

the Bankruptcy Code. In this instance, § 1141(d)(1) applies and provides that confirmation of a plan discharges the debtor from any debt that arose before confirmation whether or not a proof of claim is filed.[28] The Debtors also rely upon § 13.09(D) of the Plan which specifically enjoins creditors from offsetting claims existing as of the Effective Date. The State did not file a proof of claim for any pre-confirmation tax liability. According to the Debtors, such debts were discharged and cannot be used as the basis for offset. The Debtors contend that because the State has no claims and no ability to seek an offset it should be barred from auditing the tax credits paid to CIE.

The State maintains that it was not required to file a proof of claim because its claims are nondischargeable and survived confirmation.[29] It asserts that its claims for overpayment are unassessed tax liabilities entitled to priority under § 507(a)(8)(A)(iii). Section 523(a)(1) excepts from discharge certain taxes entitled to priority under § 507(a)(8), whether or not a claim for such tax was filed. Section 1141(d)(2) incorporates the exceptions to discharge listed in § 523 into chapter 11 and limits the effect of discharge upon confirmation. However, both § 523(a) and § 1141(d)(2) limit the application of these discharge exceptions to individuals. Neither MER, CIE, or any of the Debtors are individuals. Section 1142(d)(2), therefore, does not preclude discharge of their taxes.[30] For this reason, confirmation of the Plan discharged the

---

[28] 11 U.S.C. § 1141(d)(1)(A).

[29] Rule 3003(c)(3) requires that creditors who are not scheduled, or who are scheduled as disputed, contingent, or unliquidated file a proof of claim. Those creditors that fail to do so "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(3).

[30] *Payless Cashways, Inc. v. Tippecanoe County (In re Payless Cashways, Inc.)*, 254 B.R. 746, 749 (Bankr. W.D. Mo. 2000) (post-confirmation, taxing authority was barred by discharge injunction from attempting to collect pre-petition personal property taxes); *see also Circle K Stores, Inc. v. State of Montana Dept. of Revenue (In re Circle K. Corp.)*, 198 B.R. 784 (Bankr. D. Ariz. 1996).

8

State's claims for affirmative recovery of any pre-petition tax claims they might have against CIE.

The Debtors argue that under § 1141(d)(1) their discharge is complete and precludes any offsets. The State counters that § 553(a) controls, and specifically preserves a creditor's right of offset despite the discharge under § 1141(d)(1). The Ninth Circuit addressed the interplay of these conflicting statutory provisions in *Carolco Television Inc. v. National Broadcasting Co. (In re DeLaurentiis Entertainment Group Inc.),* 963 F.2d 1269 (9th Cir. 1992), in which the debtor owed National Broadcast Company (NBC) $1.6 million, while NBC owed the debtor $1.25 million.[31] Both debts arose pre-petition, and NBC filed a proof of claim asserting the right to offset its $1.25 million obligation to the debtor. The debtor argued that its confirmed plan precluded NBC's offset.

In *DeLaurentiis*, the Ninth Circuit first recognized the conflict inherent between § 553 and § 1141. To reconcile this statutory conflict it examined decisions construing the discharge provisions within the other bankruptcy chapters. First, it reviewed § 1327, the chapter 13 provision containing virtually identical language to that found in § 1141. The Ninth Circuit noted that the majority of courts held that the discharge provisions of § 1327 controlled and precluded offsets under § 553.[32] Yet, the majority of courts construing the discharge provisions contained in § 524(a)(2), governing chapter 7 proceedings, reached a contrary conclusion despite

---

[31] The debtor's claim was sold to plaintiff Carolco Television, Inc., but the court will refer to the debtor for ease of reference and comparison.

[32] *DeLaurentiis,* 963 F.2d at 1275.

9

that statute's express reference to offset within its provision.[33] The Ninth Circuit ultimately concluded that "the primacy of setoffs is essential to the equitable treatment of creditors."[34] The court held that § 553(a) took precedence over the discharge provisions of § 1141, based upon:

> not only on the foregoing persuasive authority, but also on the language and structure of section 553 and the policies which underlie it. Section 553 provides that, with listed exceptions not relevant here, 'this title does not affect the right of any creditor to offset a mutual debt ...' This language not only establishes a right to setoffs in bankruptcy, subject to enumerated exceptions, but seems intended to control notwithstanding any other provision of the Bankruptcy Code. To give section 1141 precedence would be to ignore this language.[35]

*DeLaurentiis* aligns the Ninth Circuit with "[m]ost cases [that] hold that a valid setoff claim cannot be defeated by a discharge in bankruptcy."[36] These courts permit a creditor to use a setoff to defensively reduce claims asserted by debtors against it.[37] Under *DeLaurentiis,* the

---

[33] *Id.* at 1275-1276.

[34] *Id*. at 1277.

[35] *Id*. at 1276-77.

[36] *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier),* 127 B.R. 233, 237 (B.A.P. 9th Cir. 1991)(collecting cases)(construing effect of discharge under § 524(a)).

[37] The Debtors have argued that *DeLaurentiis* is distinguishable because the creditor in that case filed a proof of claim asserting its claim of setoff, which the State did not do. ECF No. 1383 at 6-7. "'The distinction between asserting setoff as a defense and asserting setoff as a claim is one without a difference insofar as the evidence required to be presented to prove the defendant's alleged right to setoff (proof of a pre-petition valid and enforceable claim against the estate) and the prerequisites that must be satisfied to permit setoff against a claim of the estate (i.e., that the defendant's claim is not disallowed).'... Clearly, by asserting setoff as a defense, [the defendant] is seeking to restructure the debtor-creditor relationship between himself and the Debtor by asserting a claim against the Debtor and Debtor's bankruptcy estate. [The defendant's] setoff defense in this case is akin to an informal proof of claim...." *Crum v. Blixseth (In re Big Springs Realty LLC)*, 430 B.R. 629, 634 (Bankr. D. Mont. 2010)(quoting *Commercial Fin. Services Inc. v. Jones (In re Commercial Fin. Services, Inc.)*, 251 B.R. 397, 406-407 (Bankr. N.D. Okla. 2000)); *see also Crampton v. Houseman (In re Houseman)*, 2014 WL 1214497 at *3-4 (Bankr. E.D.N.C. Mar. 24, 2014). Accordingly, this court is unpersuaded by the Debtors' argument regarding the lack of a State proof of claim asserting setoff.

State may reduce its pre-petition obligation to MER by any valid, mutual pre-petition debt owed to it despite the discharge or plan language.[38]

### 2. Timing.

Section 553(a) provides for the offset of pre-petition obligations.[39] The State seeks to offset pre-petition tax liabilities, if any exist, against unpaid pre-petition tax credits. Specifically, the State now seeks to audit CIE for tax years 2010-2014 to determine CIE's pre-petition tax liability.[40] Any pre-petition tax claims are presently inchoate and contingent upon the State's post-petition audits of the pre-petition tax years, specifically 2010-2014. Yet, "[a] debt can be owing pre-petition even though that debt did not come into existence until post-petition events occurred."[41] The court, therefore, assumes for the purposes of this Motion that any tax liability resulting from the audit of CIE's pre-petition tax liability would constitute a pre-petition liability for purposes of offset.

The State seeks to offset CIE's pre-petition tax liability against its obligation to redeem tax certificate credits owed to MER. According to the State, MER's tax credits arose from both pre- and post-petition work. The tax credits referred to as 2014E, 2014F, and 2015A, exceeding

---

[38] The Plan's prohibition on post-confirmation setoff in paragraph 13.09 echoes § 1141(c), which provides that post-confirmation, the property dealt with by the plan is free and clear of all claims and interests of creditors. Thus, the holding in *DeLaurentiis* renders paragraph 13.09 ineffective to bar the State's assertion of setoff as to CIE's potential pre-petition tax liability.

[39] *In re Buckenmaier*, 127 B.R. 233, 238 (B.A.P. 9th Cir. 1991); *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 594 (B.A.P. 9th Cir. 2007)("With regard to the timing element, 'each debt or claim sought to be offset must have arisen prior to the filing of the bankruptcy petition.'") (quoting *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996))[emphasis in original].

[40] ECF No. 1216 at 10-11.

[41] *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 595 (B.A.P. 9th Cir. 2007) (citing *U.S. Through Agr. Stabilization and Conservation Svc. v. Gerth*, 991 F.2d 1428, 1434 (8th Cir. 1993)).

$6.8 million, are rooted in pre-petition work. The work supporting tax credits associated with 2015B and 2016A, totaling roughly $1.5 million, relates, in part, to post-petition work. Neither party addresses the duality of these tax credits as pre- and post-petition obligations, or attempts to quantify what amounts fall into each category. The amounts of MER's tax credits arising post-petition would fall outside the statutory protection for the offset of pre-petition debts provided by § 553(a).

For purposes of this Motion, it is clear that the State owes MER on pre-petition tax certificate credits. It is also clear that the State seeks to establish pre-petition tax claims against CIE to use for its offset against the pre-petition tax credits owed to MER. The Motion does not attempt to quantify any pre-petition tax liability. Rather, the Debtors seek to preclude the State from even auditing CIE's pre-petition taxes. The State has demonstrated the possibility of establishing pre-petition debts that may support an offset under § 553(a) notwithstanding the confirmed plan and § 1141(d)(1). The bigger problem, however, remains the mutuality of these debts.[42]

---

[42] As discussed above, it is unclear whether the State seeks to offset post-petition debts against MER's post-petition tax credits. However, § 553 limits the statutory protections for offsets to pre-petition obligations. The Bankruptcy Code does not preclude post-petition offsets, but post-petition, pre-confirmation liabilities would be subject to the discharge provisions of § 1141 as well as the contractual terms of the confirmed Plan. *See U.S. v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536 (3rd Cir. 1998); *Fazio v. Growth Development Corp. (Matter of Growth Development Corp.)*, 168 B.R. 1009, 1018 (Bankr. N.D. Ga. 1994). Both § 1141(d) and § 13.09(D) of the Plan preclude the State from offsetting any post-petition, pre-confirmation liability of CIE against MER's post-petition, pre-confirmation tax credits.

### 3. Mutuality.

Mutuality for purposes of offset requires that the debts be "in the same right and between the same parties, standing in the same capacity and same kind or quality."[43] "The mutuality requirement is strictly construed."[44] For debts to be owed in the same right under § 553 they must both be pre-petition debts.[45] "Courts construing [the same capacity] requirement have generally held that the concept of 'capacity' refers to the nature of the relationship between the parties."[46]

Here, the State seeks to offset the tax certificate credits it owes to MER against any tax liability CIE owes to it. To the extent that MER owes pre-petition taxes to the State, both timing and mutuality would be satisfied. An audit of MER's pre-petition tax years, therefore, would not offend either the Bankruptcy Code or the Plan. But that has not been the focus of the parties' briefing. The State seeks to audit CIE's pre-petition taxes in anticipation of offsetting that obligation against MER's pre-petition tax credits. Facially, the State's attempts to offset debts involving different parties and mutuality appears to be lacking.

The State relies upon Article 4.07 of the Plan to address the mutuality issue. It contends that this provision "substantively consolidated" all of the Debtors at confirmation into one entity such that its pre-petition tax claim against CIE has been transformed into a single claim against

---

[43] *HAL, Inc. v. U.S. (In re HAL, Inc.)*, 196 B.R. 159, 161-162 (B.A.P. 9th Cir. 1996) (quoting *Boston and Maine Corp. v. Chicago Pac. Corp.*, 785 F.2d 562, 566 (7th Cir. 1986)).

[44] *In re Wade Cook Financial Corp.*, 375 B.R. 580, 594 (B.A.P. 9th Cir. 2007).

[45] *Biggs v. Stovin (In re Luz Intern., Ltd.),* 219 B.R. 837, 846 (B.A.P. 9th Cir. 1998) ("Because a pre-petition debt is not entitled to the same setoff rights as a post-petition debt, the mutual debts must arise pre-petition in order to be in the 'same right.'").

[46] *Id.* at 847-848.

13

all of the Debtors. The State similarly argues that MER's tax credits are now owed to the substantively consolidated single entity. Admittedly, "[o]rders of substantive consolidation combine the assets and liabilities of separate and distinct - but related - legal entities into a single pool and treat them as though they belong to a single entity."[47]

The Debtors now argue that whatever it asked for, and received, at confirmation, it was not substantive consolidation in its purest form. In support of this argument, the Debtors point out the court's reservations regarding the proposed consolidation.[48] Nonetheless, the Order Confirming Joint Plan of Reorganization of Miller Energy Resources, Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code (Confirmation Order) (ECF No. 502) expressly provides for substantive consolidation of the Debtors, but limits its reach to "Distribution and voting purposes only...."[49]

Whatever the Debtors accomplished through their joint plan, and reference to substantive consolidation, it did not create mutuality for purposes of the State's asserted offset. Such post-petition substantive consolidation was limited to voting and distribution. Voting is irrelevant to the State's offset rights, and there is no distribution to be made from the plan to the State as it has no claim for distribution. Rather, the State seeks to *defensively* use its claim against CIE to reduce its liability to MER on its tax credits. As such, the State's claims remain against CIE

---

[47] *Alexander, et al. v. Compton, et al. (In re Bonham),* 229 F.3d 750, 764 (9th Cir. 2000). In *Bonham,* the Ninth Circuit Court of Appeals instructed that "substantive consolidation 'is no mere instrument of procedural convenience ... but a measure vitally affecting substantive rights.'" *Id.* at 762 (citing cases).

[48] The court raised this issue during the hearing on the Debtors' disclosure statement, noting that whatever the Debtors were proposing it was not substantive consolidation as defined within the Ninth Circuit. *See* ECF No. 394 at 46:12-47:22.

[49] Order Confirming Plan (ECF No. 502) at ¶ UU, p. 21.

rather than the consolidated entity. Equally as important, MER's tax credits were not part of the Debtor's distribution, and have revested in MER. The Plan specifically provided that the Debtors retained their separate identities post-confirmation, and MER continues to hold its tax certificate credits. The State's efforts to offset CIE's claims to reduce MER's tax credits lack mutuality as they involve two separate entities.

Finally, even if the court considered the Debtors to have been substantively consolidated for purposes of the State's proposed offset, relief would still be inappropriate. Because substantive consolidation occurred post-petition upon confirmation of the Plan, the consolidated entity necessarily acquired MER's claim and CIE's debt post-petition, and consolidation was not sought retroactively. For the reasons discussed above, post-petition offsets are not protected by § 553(a), and are barred by § 1141(d)(1) and § 13.09 of the Plan.[50]

Nor does a finding of substantive consolidation end the mutuality inquiry. In *In re Wade Cook Financial Corp.,* 375 B.R. 580, 598-600 (B.A.P. 9th Cir. 2007)*,* the court undertook an alter ego analysis as part of its examination as to the mutuality of parties for purposes of setoff. The court recognized that "substantive consolidation ignores the corporate form in order to combine the assets and liabilities of entities whose businesses and/or finances are so intertwined that it makes no sense to disentangle them. Accordingly, the substantive consolidation of WCFC and SMIL does not establish per se that SMIL was the alter ego of WCFC or vice versa."[51] In this instance, the Debtors essentially obtained consent to effect a limited consolidation of the

---

[50] *See In re England Motor Co.*, 426 B.R. 178 (Bankr. N.D. Miss. 2010) ("[F]or the Consolidation Order to create mutuality, this Court must give the substantive consolidation of the cases retroactive effect before the Petition Date, relief that this Court is loathe to provide.").

[51] *In re Wade Cook Financial Corp.,* 375 B.R. 580, 598 (B.A.P. 9th Cir. 2007).

15

Debtors for plan purposes only. The State has not demonstrated that there is "such a commingling, of the affairs of [MER and CIE] as to work an injustice on third parties if their separate status is recognized" so that this court may "hold the two corporations are, in effect, one legal entity."[52] Accordingly, the proposed offset is not between the same parties acting in the same capacity.

## Conclusion

For the reasons set forth above, the Motion is granted in limited part. The court concludes that the State of Alaska does not have the right to offset its liability to MER by any amounts owed to it by CIE for unpaid oil and gas taxes. While the Plan does not preclude offsets of pre-petition debts under § 553(a), any proposed offsets involve separate entities in different capacities and mutuality is lacking. However, this court will not grant the Debtors' request to prohibit the State from conducting an audit of CIE's tax credits, but simply notes the application

//

---

[52] *Id.* at 599.

of § 524(a)(2) as to any discharged debts.[53]  A separate order shall be entered contemporaneously with this memorandum.

DATED: November 16, 2017.

BY THE COURT

 /s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  C. Christianson, Esq.
D. Bundy, Esq.
D. Zdunkewicz, Esq., Andrews Kurth Kenyon, LLP, 600 Travis, Suite 400, Houston, TX 77002
U.S. Trustee
ECF Participants per NEF

---

[53] Again, the court follows the parties' lead and limits its observation to the audit of CIE's tax credits, as the record does not address any effort to audit MER.